THE PEOPLE OF THE STATE OF NEW YORK ex rel. NICHO-
LAS HON YOST, Appellant, *v.* DANIEL P. BECKER, as
Sheriff of Oneida County, Respondent.

Constitutional law — unconstitutionality of statutes (L. 1896,
ch. 812 and L. 1901, ch. 361) creating a municipal corporation
which is not a county, city, town or village — invalidity of com-
mitment issued by a justice of the peace of the "area or terri-
tory known as Sylvan Beach."

1. The Constitution constitutes the counties, cities, towns and
villages of the state the civil divisions for political purposes and
indispensable to the continuation of the government organized by
it, and this is equivalent to a direct prohibition against the creation
of any other civil divisions vested with similar powers.

2. The legislative acts, chapter 812 of the Laws of 1896 and chapter
361 of the Laws of 1901, purporting to revise and consolidate pre-
vious acts creating the "area or territory known as Sylvan Beach,"
are without constitutional warrant, and a commitment issued by a
police justice claiming to hold his office under such acts is void.

*People ex rel. Hon Yost* v. *Becker*, 142 App. Div. 929, reversed.

(Argued June 1, 1911; decided October 17, 1911.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
January 27, 1911, which affirmed an order of Special
Term dismissing a writ of certiorari directing the defend-
ant to certify to the court the cause of the imprisonment
of the relator.

The facts, so far as material, are stated in the opinion.

*J. T. Durham* for appellant. The area or territory of
Sylvan Beach was incorporated and now exists in viola-
tion of the Constitution of the state of New York and
the office of police justice created thereunder is a nullity
and Thomas P. Bryant had no right or jurisdiction to
commit the relator. (Const. of N. Y. art. 3, § 18; *Read*

v. *Schmit,* 39 Hun, 223; *People ex rel. Townsend* v. *Porter,* 90 N. Y. 68.)

*Edwin J. Brown* for respondent. The area or territory of Sylvan Beach is not a village within the inhibition of section 18 of the Constitution, but is a municipal corporation according to the definition of section 3 of the General Corporation Law. (*Yellow Pine Lumber Co.* v. *Board of Education,* 15 Misc. Rep. 58; *Bassett* v. *Fish,* 75 N. Y. 311; *People ex rel. Wood* v. *Draper,* 15 N. Y. 532; *People* v. *Shepard,* 36 N. Y. 285; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *People* v. *Wilber,* 39 N. Y. S. R. 743.)

COLLIN, J. In July, 1910, the relator was imprisoned in the jail of Oneida county under a commitment issued by "Thomas P. Bryant, Police Justice of the Area or Territory of Sylvan Beach, N. Y.," as a Court of Special Sessions of the town of Vienna, Oneida county. The respondent, by his return to the writ and arguments, contends that the commitment defends the imprisonment. The relator argues that the area or territory of Sylvan Beach was incorporated as a village in violation of the section of the Constitution of the state which prohibits the legislature from passing private or local bills incorporating villages, and, as a corollary, that the Court of Special Sessions or Police Court and the office of police justice within the area or territory of Sylvan Beach, N. Y., were non-existent and the commitment was void.

The character of the area or territory of Sylvan Beach in July, 1910, was fixed by chapter 812 of the Laws of 1896 and chapter 361 of the Laws of 1901. The first act named was entitled "An act to revise, amend and consolidate the several acts relating to the area or territory known as Sylvan Beach, in the town of Vienna, county of Oneida, and to repeal certain acts and parts of acts." The second act named was entitled "An act to amend, revise and consolidate chapter eight hundred and twelve

of the laws of eighteen hundred and ninety-six, entitled
' An act to revise, amend and consolidate the several acts
relating to the area or territory known as Sylvan Beach,
in the town of Vienna, county of Oneida, and to repeal
certain acts and parts of acts.' " In aid of clearness and
brevity we will here speak of them as a single act. The
act provides: It shall affect all that part of the town of
Vienna known as Sylvan Beach, which it particularly
describes. (Section 1.) On the Tuesday succeeding the
first Monday in August in each year, the owners of real
property within the said area or territory particularly
described, as appearing upon the assessment rolls of said
territory for the then current year and who are qualified
to vote at town meetings or city elections in the town or
city in which they respectively reside, and all persons who
actually reside within such area or territory and are quali-
fied to vote at town meetings in the town of Vienna,
shall hold a meeting for the election of officers of said
territory, who shall have the powers conferred by the act.
(Section 2.) The officers of said territory of Sylvan Beach
shall be a president, four trustees, a clerk, a treasurer, an
assessor, a collector, a street commissioner, a chief of the
fire department, a police justice, a chief of police and the
necessary patrolmen and special police, whose respective
qualifications and terms of office and official duties and
powers are prescribed. The president and trustees
shall constitute the board of trustees for said area or
territory. (Section 3.) Section 4 enumerates in eighteen
subdivisions the powers of the trustees. They may,
for said area or territory, construct a drainage and
sewage system, establish sanitary, police and fire regula-
tions, prevent vice and immorality, preserve order and
control public entertainments, build station houses and
lockups, organize and maintain a fire department, exer-
cise the same power as village boards of health, enact
such regulations as they may deem proper from time to
time and enforce them with penalties, violations of which

shall be misdemeanors, and appoint officers other than those named in the act, or committees, deemed necessary or useful in carrying out the act or for the good government and maintenance of the government of the area or territory. Policemen for such territory shall have the powers and duties of constables in towns and peace officers. (Section 16.) It provides for the assessment of the persons and property within the said territory and the voting, levying and collection of the taxes to defray the expenses authorized by the act. (Sections 8, 9, 10, 17, 19, 20.) The territory is constituted a separate highway district, wherein the trustees have all the powers and shall perform all the duties of commissioners of highways in towns. (Section 11.) Public parks and a park commissioner (Section 14) and an officered and equipped fire department are authorized. (Section 15.) It enacts that there shall be elected within and for said territory a police justice who shall have the power and jurisdiction in all cases of the violation of the regulations and ordinances of said territory of Sylvan Beach, and in all criminal cases of police justices under the village laws of the state, or which may be thereafter conferred by said laws on police justices, and shall be subject to the same duties and liabilities as police justices in villages and in all other respects be governed by said village laws conferring the powers and rights and defining the duties and liabilities of justices in villages. In case of the absence or inability of said police justice to act in his official capacity, any justice of the peace of the towns of Vienna or Verona shall have authority to act in his place. (Section 13.) The said territory is subject to actions to enforce any claim or demand against it and process therein shall be served on the president of the board of trustees or clerk. (Section 22.) The foregoing statement, although imperfect, sets forth the salient and characterizing effects of the legislation. The antecedent legislative acts relating to this area or territory are chapter 308 of the Laws of 1887 and chapter 194 of the

Laws of 1888.   Those subsequent are chapter 292 of the Laws of 1906 and chapter 80 of the Laws of 1910.   Thomas P. Bryant was elected, in accordance with the provisions of the statute, the police justice of the area or territory of Sylvan Beach, N. Y., and his term had not in July, 1910, expired.

The statutes were inhibited by the Constitution of the state.   The powers they purported to confer upon the area or territory related to health, order, good government, police and fire protection, highways, public grounds, the expending of money for public purposes and the levying and collecting of taxes within it.   It was invested with perpetuity of existence and the right to acquire, hold and dispose of property.   It was given a governing body with the power of appointing officers and agents, the power to enact regulations and ordinances, enforce them and punish for their infractions.   It held its powers and rights for public purposes and for the peculiar benefit of its inhabitants and the owners of real property within it.   It was a body politic and corporate and, as such, the local recipient of administrative and judicial functions to be used as a part of the state government for the public good, by the exercise of which it become a participant in the government of the state.   (*MacMullen* v. *City of Middletown*, 187 N. Y. 37; *Barnes* v. *District of Columbia*, 91 U. S. 540; *People ex rel. Devery* v. *Coler*, 173 N. Y. 103; *Wells* v. *Town of Salina*, 119 N. Y. 280.)   It was a legal municipal corporation unless the people of the state had by their supreme and paramount law restrained the legislature from instituting it.   The legislature may exercise the whole legislative power of the people except as the Constitution expressly or by implication forbids. The people of the state, in and by means of the Constitution of 1777, constructed in broad and general language the framework of the system or the machinery through the operation of which they would be governed.   They would neither found nor tolerate a government which did not

include and guard the principle that all local concerns and
affairs should be regulated by the voice and action of the
local community, subject only to the control and super-
vision of the general state government.     Essential for
the existence and sway of that principle were separate
territorial subdivisions of the state, possessing respec-
tively the chartered or delegated powers and rights in
which were its authorization and opportunity.    Neither
in theory nor in operation was the principle new and
through centuries in England, and in the existence of
the colony of New York, it had been vital.    In the colony
the territorial subdivisions which were its domain were
counties, towns and cities, each of which had in England
its prototype or model, the first and last in its counties or
shires and its cities, the second in its hundreds.    The
Duke's Laws, promulgated in 1665, required the election
"by the plurality of voices of the freeholders in each
town" of eight overseers for the town, "men of good
fame and life," and provided "all votes in the private
affairs of Particular Townes shall be given and Deter-
mined by the inhabitants, freeholders, householders,"
and justices of the peace were commissioned for the
various towns.  (1 Lincoln's Const. Hist. of New York,
pages 423, 424, 458.)   The colonial territory had not then
been divided into counties; it was divided into twelve
counties by an act of November 1, 1683, passed by the
first representative assembly of the colony.   (3 Lincoln's
Const. Hist. of New York, pages 137, 138, 139.)    The
first English charter of New York city (the first city of
the colony), known as the Dongan charter, was granted
April 27, 1686, and the first charter of the city of Albany
(the second city of the colony), the Dongan charter, was
granted July 22, 1686.    The Constitution of 1777 was in
large measure the adaptation of established civil rules
and institutions to the new conditions wrought by the
complete dissolution of the allegiance of the colonies to
the British crown.    It adopted counties, towns and

cities as the civil units of the state and the local auxiliaries of its government. (Articles 4, 5, 7, 12, 29.) During the first half century succeeding the birth of the state, the growth of urban communities was slow and it was not until 1785 that the third city of the state, the city of Hudson, was incorporated, and in 1790 the first incorporated village, the village of Lansingburg, received existence. (Laws of 1790, chap. 49; Laws of 1795, chap. 4.) The Constitution of 1821 recognized and adopted the village as an additional civil subdivision of the state (Article 2, section 1), and thenceforth counties, towns, cities and villages are the subordinate governmental units recognized by the Constitution of the state. The third Constitution, that of 1846, reaffirmed the substance of the provisions of those of 1777 and 1821 relating to counties, towns, cities and villages, and added others, making more firm their places in the political system and more clear the intendment of those who framed it that they were and should remain the only territorial divisions for the purpose of local government. It empowered the legislature to enlarge the powers of boards of supervisors to legislate locally (Article 3, section 17); made it the duty of the legislature to provide for the organization of cities and incorporated villages and to restrict their power of taxation, assessment, borrowing money, contracting debt and loaning their credit (Article 8, section 9); promulgated the familiar home rule provision (Article 9, section 2); enjoined, by an amendment adopted in 1874, the legislature from passing a private or local bill incorporating villages (Article 3, section 18), and by an amendment of 1884 provided: "No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, or become directly or indirectly the owner of stock in, or bonds of, any association or corporation; nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or

village purposes." (Article 8, section 10.) All of these provisions are continued and others relevant to the discussion are contained in the Constitution of 1894. From this brief review of the parts of the Constitution· which relate to the instrumentalities and methods of local government, it is apparent that it constitutes the counties, cities, towns and villages of the state the civil divisions for political purposes and indispensable to the continuation of the government organized by it. Their distinctive character and attributes cannot be conferred upon municipal corporations differently denominated without subverting the form of government which it framed. The constitutional provisions to which we have referred, and legislative acts, such as, for instance, the Election Law, the Public Health Law or the Liquor Tax Law, would be foreign and inoperative as to a shire, parish, manor or area or territory although given the powers conferred upon counties, towns, cities and villages, and therefrom would result uncertainty and disorder superseding government. We hold that the adoption by the Constitution of counties, towns, cities and villages as the civil divisions exercising general powers of local government and the local auxiliaries of the state government is equivalent to· a direct prohibition against the creation of other civil divisions vested with similar powers. This conclusion is supported by the opinion of this court in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50) and *People ex rel. Townsend* v. *Porter* (90 N. Y. 68). There is nothing inconsistent with this view in the ·organization of boroughs in the city of New York, under its charter, as these are merely subordinate subdivisions of a city.

The appellant argues that the territory was incorporated a village in violation of the constitutional provision that a private or local bill incorporating villages shall not be passed, and calls our attention to various parts of the incorporating statutes which in substance are in the Village Law. The respondent, citing from the General

Corporation Law (Cons. Laws, chap. 23) "A 'municipal corporation' includes a county, town, school district, village and city and any other territorial division of the state established by law with powers of local government" (General Corporation Law, section 3), argues that it was not incorporated a village but a "territorial division of the state established by law with powers of local government." This contention we are not required to consider. It is an element essential in the incorporation of a county, town, city or village that it be incorporated by expressed classification a county, or a town, or a city, or a village. The legislature must, in order that our political system have orderly and intended operation, give to a body corporate having general powers of local government a classification or denomination and thereby fix its proper place in the governmental machinery. The body at the bar it denominated "area or territory," and in case we amended it to village or city, or deemed it thus amended, we would perform a legislative and not a judicial act.

The statutes purporting to incorporate the area or territory of Sylvan Beach, N. Y., are, for the reasons stated, unconstitutional and void. It follows that an incorporated area or territory of Sylvan Beach, N. Y., or the office of police justice of the area or territory of Sylvan Beach, N. Y., did not exist and the commitment was void.

The orders appealed from should be reversed and the relator discharged from imprisonment.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Orders reversed, etc.