## O. T. HARRIS, Appellant, v. WILLIAM R. COMPTON BOND & MORTGAGE COMPANY et al.

**In Banc, July 2, 1912.**

1. **LEGISLATURE: New Political Corporations.** The Legislature in the creation of municipal and public corporations of any description, is absolute and unlimited, in the absence of some specific provision in the State or · Federal Constitution restricting and inhibiting such power. In the absence of some constitutional limitation, the Legislature is vested with the whole power of the State, and may establish any public, political or municipal corporation it deems necessary or expedient to the public interest.

2. ———: ———: **Special Road Districts: Power of Taxation.** The General Assembly is not prohibited by the Constitution from creating special road districts and conferring on them power to issue and sell bonds and use the proceeds to construct public roads and to levy taxes to pay said bonds. Nor is that power impliedly or by necessary exclusion denied by those provisions which create counties and confer upon county courts the duties and powers to open, improve and maintain public roads and to levy taxes for those purposes. Not only does the Constitution recognize and contemplate municipal corporations other than county, city, town, township and school district, but, since there is no inhibition in the Constitution upon the Legislature's otherwise unlimited power, it can create other municipal or public corporations, and at any time increase or decrease their powers.

3. **SPECIAL ROAD DISTRICTS: Limitations on Taxation: Twenty-five Cents on the Hundred Dollars.** Special road districts are not limited to a levy of twenty-five cents on the hundred dollars of assessed valuation for road and bridge purposes and for the payment of bonds issued in aid of permanent road construction. The amendment of 1908 to the Constitution authorizing a levy of twenty-five cents for road and bridge purposes, does not impose any such limitations upon the districts, nor does it have any application to such districts. Special road districts, as other municipal corporations, cannot create a debt in excess of five per cent of the assessed valuation of its property, but there is no limitation of the amount of taxes it may levy, except that it must levy a tax sufficient to pay the principal and interest of the bonds as they become due.

Harris v. Bond Co.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris,* Judge.

AFFIRMED.

*H. N. Eversole* for appellant.

(1) It is not within the power of the Legislature under the Constitution to create special road districts having the powers and functions of the Fulton Special Road District, and Art. 6, Ch. 102, R. S. 1909, as amended, and the act approved March 18, 1911, authorizing special road districts to issue bonds and providing for the payment thereof, are unconstitutional and void. Under the Constitution and polity of Missouri, particularly as shown by the cases to which we call attention herein, the construction and maintenance of roads is a proper function of the county; taxes for road purposes are taxes for county purposes, and consequently, under our Constitution, as construed and applied by the Supreme Court, the Legislature has no power or authority to deprive the county courts of their jurisdiction and control of the construction of roads and highways in any part of the county and transfer the same to a body of commissioners representing a subdivision of the county. State ex rel. v. Railroad, 101 Mo. 120; State ex rel. v. Railroad, 123 Mo. 72; State ex rel. v. Railroad, 145 Mo. 596. The proceedings for the formation of the Fulton Special Road District of Callaway county were had under the provisions of Art. 6 of Chap. 102, R. S. 1909, Sec. 10576 to Sec. 10610, as amended. By Sec. 10576 it is declared that the provisions of that section authorizing the incorporation of these road districts "shall not apply to counties under township organization." State v. Gordon, 197 Mo. 55; District v. Huber, 212 Mo. 551. By Sec. 10577 as amended by an Act approved March 18, 1911 (Laws 1911, p. 370),

it is declared that "every such district organized un-
der the provisions of this article shall be a body corpo-
rate and possess the usual powers of a corporation for
public purposes . . . and in that name shall be cap-
able of suing and being sued and of contracting and
being contracted with." The Legislature has thus
provided for the creation of a public body with full
corporate powers and has by further provisions of the
statutes attempted to confer on that body certain im-
portant public functions. The question presented in
this case is whether it is within the constitutional
power of the Legislature to create such a corporation.
People ex rel. v. Becker, 203 N. Y. 201. The revenues
of the special road district are derived from the fol-
lowing sources: (1) one-fourth of all dramshop, pool
or billiard table licenses collected by any city within
the special road district (R. S. 1909, Sec. 10593); (2)
a proportion of county taxes levied upon property
within such road district based upon the amount an-
nually appropriated or expended for road and bridge
purposes; (3) one-half of all dramshop, pool or bil-
liard table licenses collected by the county within the
limits of the district (R. S. 1909, Sec. 10594); (4), a
poll tax of two dollars and fifty cents upon each male
inhabitant in the district and without the limits of any
incorporated town or city; (5), a tax of not less than
ten nor more than twenty cents on the $100 valuation
"which shall be a part of the tax which may be levied
for county purposes." (R. S. 1909, Sec. 10595.)
These taxes (outside of the licenses and poll taxes)
are treated as a part of the county taxation. It is
expressly provided that the funds so provided shall
be applied for working, repairing and improving the
public roads only. The powers conferred upon the
special road districts by the provisions of Art. 6, Ch.
102, R. S. 1909, as amended, have been substantially
enlarged and extended by the Act approved March
18, 1911. By that act the board of commissioners of

special road districts are authorized to issue district bonds to an amount including existing debt, not exceeding five per centum of the assessed valuation of such road district, to be ascertained by the assessment next before the last assessment for State and county purposes. Before such bonds can be issued the question of issuing the same must be submitted to a vote and must receive the favorable vote of ''two-thirds of the voters voting at said election.'' The board of commissioners are authorized to sell the bonds to the best advantage and the proceeds are directed to be paid over to the treasurer of the district and by him disbursed on the order of the board of commissioners in payment of the cost of holding the election and in paying the cost of the roads in such districts, including bridges and culverts costing not more than $100 each. The board of commissioners is also authorized to ''provide for the levy and collection of a direct annual tax upon all taxable property in said district, sufficient to provide for the payment of the principal and interest of the bonds so authorized, as they respectively become due.'' By the provisions of Sec. 10585, the board of commissioners is given ''sole, exclusive and entire control and jurisdiction over all public highways within its district outside the corporate limits of any city or village therein,'' for the following purposes: (a), to construct, improve and repair such highways; (b), to remove all obstructions from such highways; (c), to exercise the ''power, rights and authority conferred by general statutes upon road overseers'' for the purpose above mentioned; (d), to rent, lease or buy teams, equipment, tools and machinery, all kinds of water power and all things needful to carry on such road work. The Act approved March 18, 1911, does not define the powers of the board of commissioners of the district in applying the proceeds of bonds, except that the same shall be disbursed on the order of the board of commissioners ''in payment

of the cost of holding said election and in paying the cost of roads in such districts, including bridges and culverts costing not over $100 each.'' This statute by necessary implication confers upon the board of commissioners of the district the power to construct roads and to use the proceeds of the bonds for that purpose, and the question which is presented is whether these functions properly belong to the county—at all events in counties which are not under township organization—and cannot be devolved upon a special road district created in the manner prescribed by the statutes. By Sec. 10, Art. 10 of the Constitution of Missouri it is declared, ''The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.'' Sec. 11, Art. 10, of the Constitution prescribes the limitations upon the power of counties to levy taxes for county purposes. The amendment to the Constitution adopted in 1908 (Laws 1907, p. 458; Laws 1909, p. 906) provides: ''In addition to taxes authorized to be levied for county purposes under and by virtue of Sec. 11, Art. 10 of the Constitution of this State, the county court in the several counties of this State not under township organization and the township board of directors in the several counties under township organization may in their discretion levy and collect in the same manner as State and county taxes are levied, a special tax not exceeding twenty-five cents on each $100 valuation, to be used for road and bridge purposes, but for no other purpose whatever; and the power hereby given said county courts and township boards, is declared to be a discretionary power.'' Prior to the adoption of this amendment to the Constitution, this court has held that ''road taxes'' are county taxes and affected by the lim-

itations contained in Sec. 11, Art. 10 of the Constitution. State v. Railroad, 101 Mo. 120; State v. Railroad, 123 Mo. 72; Webb v. County, 67 Mo. 353; State v. Railroad, 145 Mo. 596. The powers of taxation attempted to be conferred upon special road districts are essential for their existence; without these powers the creation of a special road district would be an empty form and the road district and its officers would be helpless, if they attempted to perform any of the functions conferred upon them by the statute. Hence, the powers of taxation are an integral part of the scheme of existence of these special road districts which cannot be severed from the remainder of the statute creating these special road districts, and if the power of taxation falls, the entire statutory scheme must fall with it. The decisions cited would seem necessarily to imply that the jurisdiction and control of the roads and bridges in a county are county matters which by the Constitution are to be entrusted to the county authorities and maintained out of the county levies. Nowhere in the Constitution is any provision to be found recognizing special road districts or authorizing their creation, either expressly or by necessary implication. On the contrary the scheme of the Constitution which recognizes counties, cities, towns and school districts as the public and political corporations which are to exercise the powers of government and which under the Amendment of 1908 confers upon counties and upon townships when counties are under township organization, the power of taxation for road and bridge purposes, preclude by necessary implication the creation of any other corporate body or function which should be vested with the power of taxation for road and bridge purposes and with the control and jurisdiction of roads and bridges, at all events, outside of the limits of the cities and townships which are properly recognized by the Constitution. If this be the correct construction of the Con

stitution of Missouri, then the principles laid down by the Court of Appeals in New York in the case of People v. Becker, supra, if deemed by this State to be applicable, render it necessary to hold that the Legislature has no power or authority to create these special road districts. (2) Special road districts created under the provisions of Art. 6, Ch. 102, R. S. 1909, as amended, are limited by Sec. 11, Art. 10 of the Constitution and by the Amendment of 1908, to the levy of a tax of twenty-five cents on the $100, for road and bridge purposes, and it is not within the power of the Legislature to confer authority upon special road districts to levy taxes for road and bridge purposes which are independent of and not subject to the limitations contained in these provisions of the Constitution. Road taxes are county taxes, and are subject to the limitations contained in Sec. 11, Art. 10, of the Constitution. State ex rel. v. Railroad, 123 Mo. 72. Township taxes are taxes for county purposes. Same case. In the case of State ex rel. v. Railroad, 145 Mo. 596, it was decided that road taxes levied by a township were held to be within the constitutional limitation on county taxes and void. What the court said in that case is pertinent here regarding the evasion of the constitutional limitation. We contend that the reasoning applies still more strongly to these special road districts, and that if they have the taxing power at all, such taxes as they levy must be considered a part of the county taxes. (3) The taxing power as limited by the Constitution is wholly inadequate to provide funds to pay principal and interest of the bond issue specified in the complaint herein. (4) The special tax of twenty-five cents on each $100 permitted to be levied by the Amendment to the Constitution of 1908, even if it were adequate, cannot be used for the purpose of paying principal and interest of the bonds sought to be issued, for the reason that the constitutional amendment authorizing that tax specifically

provides that the tax shall "be used for road and bridge purposes, but for no other purpose whatever." (5) The Fulton Special Road District of Callaway county is not a "political corporation or subdivision of the State," within the meaning of Sec. 12, Art. 10, of the Constitution and is accordingly unable to avail itself of the provisions of said section. Water Co. v. Lamar, 140 Mo. 145; Water Co. v. Aurora, 129 Mo. 540; Stanberry v. Jordan, 145 Mo. 371; Lexington v. Bank, 165 Mo. 671; State v. Payne, 211 Mo. 64; School District v. Burris, 84 Mo. App. 662; School District v. Boyle, 184 Mo. 347; Kansas City v. Neal, 122 Mo. 233; Parker v. Zeisler, 139 Mo. 298; Water Co. v. Webb, 143 Mo. 493; Tarkio v. Loyd, 179 Mo. 600. (6) The total bonded indebtedness of the Fulton Special Road District of Callaway county and of the school district of the city of Fulton, which is included within the bounds of the Fulton Special Road District, will be in excess of five per centum of the assessed value of the taxable property based on the assessment next before the last assessment for State and county purposes and under the limitations contained in Sec. 12, Art. 10 of the Constitution, if applicable to Fulton Special Road District, it has no power or authority to make the issue of bonds set forth in the complaint herein.

*Elliott W. Major,* Attorney-General, *Charles G. Revelle,* Assistant Attorney-General, *N. T. Cave* and *Thomas N. Dysart* for respondents.

(1) It is clearly within the power of the Legislature to create special road districts, having the powers and functions of the Fulton Special Road District of Callaway county, and Art. 6 of Ch. 102, R. S. 1909, as amended, and the Act approved March 18, 1911, authorizing special road districts to issue bonds and providing for the payment thereof, are clearly consti-

tutional. It is a fundamental principal of law that a State Constitution is not a grant of power, but that the power of the Legislature is unlimited and untrammeled except where the Constitution itself imposes a limit. State ex rel. v. Sheppard, 192 Mo. 506; State ex rel. v. Warner, 197 Mo. 656; Ex parte Roberts, 166 Mo. 212; County v. Jacks, 49 Mo. 199; Wilson v. Trustees, 133 Ill. 443; People ex rel. v. Becker, 203 N. Y. 201. (2) Special road districts are not subject to the limitations contained in Sec. 11, Art. 10, of the Constitution and the Amendment thereto of 1908, in the levy of the tax authorized by the Act of March 18, 1911, for the purpose of providing funds to pay the principal and interest of the bonds issued. The determination of this point will necessarily follow the determination of the question as to whether Fulton Special Road District of Callaway county is a ''political corporation or subdivision of the State'' within the meaning of Sec. 12, Art. 10, of the Constitution. If it be held that the special road district is a political corporation or subdivision of the State, within the meaning of Sec. 12, Art. 10, then clearly it has the right to levy taxes to pay its outstanding bonded indebtedness and the interest thereon, without regard to the limitations contained in Sec. 11, Art. 10, of the Constitution, and the amendment thereto of 1908. This has been decided squarely in many of the cases. Water Co. v. Lamar, 128 Mo. 216; Brooke v. Earl, 87 Mo. 252; Water Co. v. Aurora, 129 Mo. 540; Stanberry v. Jordan, 145 Mo. 371; Lexington v. Bank, 165 Mo. 671; State v. Payne, 211 Mo. 64. (3) The Fulton Special Road District of Callaway county is clearly a ''political corporation or subdivision of the State'' within the meaning of Sec. 12, Art. 10, of the Constitution, and accordingly has full authority to avail itself of the provisions of said section. Allison v. Corker, 52 Atl. 365; Auryansen v. Improvement Co., 45 N. J. R. 115; Stanley v. Board, 38 Atl. 180; Grimes v. Reynolds, 184

Mo. 679; Sec. 12, Art. 10, Constitution; State v. Tower, 185 Mo. 79; Ex parte Loving, 178 Mo. 194. (4) It is not necessary in computing the total bonded indebtedness of the Fulton Special Road District, in order to determine whether it is in excess of five per centum of the assessed value of taxable property to take into consideration the bonded indebtedness of any other municipality lying wholly or in part within the limits of the road district. 1 Dillon on Municipal Corporations (5 Ed.), p. 347; State v. Corker, 60 L. R. A. 569.

WOODSON, J.—This suit was instituted in the circuit court of Callaway county, by the plaintiff against the defendants, seeking to enjoin the board of commissioners of Fulton Special Road District of Callaway county from issuing $100,000 of its bonds, and the treasurer of the district from delivering them to the purchasers, and the purchasers thereof from accepting them, etc.

The petition was filed March 30, 1912, and was demurred to. The demurrer was by the court sustained, and the plaintiff duly excepted, and declined to plead further; the court rendered judgment in favor of the defendants, and the plaintiff duly appealed the cause to this court; and because the matters involved affect the public, the case was advanced.

The petition stated fully all the facts of the case, and the demurrer admits their truthfulness.

In order that the merits of the case may fully appear, we will set out the petition and the demurrer thereto.

The petition is in words and figures, as follows (formal parts omitted):

"Plaintiff for his cause of action herein states and represents to the court as follows:

"That the William R. Compton Bond & Mortgage Company, one of the defendants, is a corporation or-

ganized under the laws of the State of Missouri, and doing a general business in the purchase and sale of bonds.

"That the Fulton Special Road District of Callaway county, one of the defendants, has been duly organized in accordance with the provisions of Art. 6, Ch. 102, R. S. 1909.

"That J. W. Walthall, R. L. Smith and J. L. Maughs, defendants herein, are duly elected and acting members of the board of commissioners of Fulton Special Road District of Callaway county, Missouri.

"That J. W. Walthall, one of the defendants, is president and R. L. Smith, one of the defendants, is secretary, respectively, of the board of commissioners of said Fulton Special Road district of Callaway county.

"That W. C. Harris, defendant herein, is the duly elected and acting treasurer of Fulton Special Road District of Callaway county.

"That heretofore at a meeting of the commissioners of said district held on the 9th day of December, 1911, a special election was authorized and ordered to be held on Friday, December 29, 1911, for the purpose of submitting to the qualified voters of said district a proposition to issue $100,000 bonds.

"That thereafter, on the 9th day of December, 1911, due notice of said election was given by posting six notices of election in six public places within said district.

"That thereafter, on the 29th day of December, 1911, said election was duly and regularly held.

"That thereafter, on the 30th day of December, 1911, the board of commissioners of said road district proceeded to canvass the returns of the said special election and to have entered an order of record to the effect that more than two-thirds of the votes cast were in favor of the issue of said bonds.

"That thereafter, on the 28th day of March, 1912, the said board of commissioners of said road district, by resolution duly adopted, ordered the issue of $100,000 road bonds of said special road district dated March 1, 1912, maturing $6000 March 1 of each of the years 1913 to 1919 inclusive, $7000 March 1 of each of the years 1920 to 1925 inclusive, and $8000 March 1 of the years 1926 and 1927, all bonds to bear interest at the rate of five per cent per annum, payable semi-annually.

"That said board of commissioners proposes to issue said bonds under and by virtue of an act of the 46th General Assembly of the State of Missouri, entitled, 'An Act authorizing special road districts to issue bonds and providing for the payment thereof, with an emergency clause,' approved March 18, 1911.

"That on the said 28th day of March, 1912, the board of commissioners, by resolution duly adopted, ordered the levy of a direct annual tax upon all taxable property within said special road district sufficient to produce the following sums in the following years, respectively:

| Year | Amount | Principal | Interest |
|------|--------|-----------|----------|
| 1912 | $13,500 | $6000 | $7500 |
| 1913 | 10,700 | 6000 | 4700 |
| 1914 | 10,400 | 6000 | 4400 |
| 1915 | 10,100 | 6000 | 4100 |
| 1916 | 9800 | 6000 | 3800 |
| 1917 | 9500 | 6000 | 3500 |
| 1918 | 9200 | 6000 | 3200 |
| 1919 | 9850 | 7000 | 2850 |
| 1920 | 9500 | 7000 | 2500 |
| 1921 | 9150 | 7000 | 2150 |
| 1922 | 8800 | 7000 | 1800 |
| 1923 | 8450 | 7000 | 1450 |
| 1924 | 8150 | 7000 | 1150 |
| 1925 | 8800 | 8000 | 800 |
| 1926 | 8400 | 8000 | 400 |

"Which said tax for the year 1912, as well as for all other years for which it is levied, is far in excess of twenty-five cents on the one hundred dollars assessed value of taxable property within said district based on the assessment next before the last assessment for State and county purposes.

"That said board of commissioners at said meeting held March 28th, by resolution duly adopted, ordered said tax to be certified to the county clerk to be collected at the same time and in the same manner that State, county, school or other road taxes are collected.

"That said board of commissioners on said 28th day of March, 1912, by resolution duly adopted, ordered the president and secretary of the board of commissioners to execute said bonds and register them in the office of the State Auditor at Jefferson City as required by law, and thereafter to deliver them to William C. Harris, treasurer of the district, to be by him delivered to the purchasers thereof.

"That the said board of commissioners on the said 28th day of March, 1912, duly considered the offer of the William R. Compton Bond & Mortgage Company, one of the defendants herein, to purchase said issue of bonds and duly accepted said offer and entered into contract for the sale of said bonds to the said William R. Compton Bond & Mortgage Company.

"That the assessed valuation of taxable property within Fulton Special Road District of Callaway county, based on ownership as of June 1, 1909, which is the assessment next before the last assessment for state and county purposes, amounted to $2,113,580, and that the proposed bond issue constitutes the only indebtedness of the special road district and is less than five per cent of said assessed value for taxable purposes.

"That the school district of the city of Fulton, Missouri, which lies wholly within the boundaries of

Fulton Special Road District, now has an outstanding bonded indebtedness of $30,000.

"That the said bonded indebtedness of the said school district of the city of Fulton now outstanding, when combined with the proposed issue of $100,000 bonds of the Fulton Special Road District of Callaway county, far exceeds five per cent of the assessed value of taxable property within said road district, based on the assessment next before the last assessment for State and county purposes.

"That the plaintiff, O. T. Harris, is a citizen of the State of Missouri, residing in Callaway county in said State and in said special road district, and that he is now and for a long time has been a voter and taxpayer in said road district in said county and State aforesaid.

"That the defendants J. W. Walthall, R. L. Smith, and J. L. Maughs, constituting the board of commissioners of said road district, and W. C. Harris, a defendant herein, as treasurer of said road district, are about to and will conclude and consummate the execution and delivery of said bonds to the said William R. Compton Bond & Mortgage Company unless they be restrained from doing so by this Honorable Court.

"Your petitioner further states that the issuance of said bonds as hereinbefore indicated, will be wrongful, invalid and illegal, and that said bonds are void.

"First. Because there is no constitutional authority for the creation by the Legislature of the State of Missouri of special road districts having governmental functions, and because Art. 6, Ch. 102, R. S. 1909, as amended, is unconstitutional and void.

"Second. Because special road districts created under the provisions of Art. 6, Ch. 102, R. S. 1909, as amended, are limited by Sec. 11, Art. 10, of the Constitution of the State of Missouri, and by the Amendment of 1908 to said section of the Constitution, to the levy of a tax of twenty-five cents on the one hun-

dred dollars, and because the taxing power of said road district as limited by said Sec. 11, Art. 10, of the Constitution, as amended, is wholly inadequate to provide funds to pay principal and interest of said bond issue.

"Third. Because said special tax of twenty-five cents on each one hundred dollars, even if it were adequate, cannot be used for the purpose of paying principal and interest of this bond for the reason that the constitutional amendment authorizing it specifically provides that said tax shall be used for road and bridge purposes and for no other purpose whatever.

"Fourth. Because said Fulton Special Road District of Callaway county is not a "political corporation or subdivision of the State" within the meaning of Sec. 12, Art. 10, of the Constitution of the State of Missouri, and is accordingly unable to avail itself of the provisions of said section.

"Fifth. Because the total bonded indebtedness of that part of the said Fulton Special Road District of Callaway county which lies within the boundaries of the school district of the city of Fulton, Missouri, will be in excess of five per cent of the assessed value of taxable property based on the assessment next before the last assessment for State and county purposes.

"Plaintiff further states that the issuance and sale of said bonds in the manner contemplated by said board of commissioners as hereinbefore indicated will be wrongful, and will work great injury to the plaintiff.

"Wherefore, by reason of the premises herein, the plaintiff being without adequate remedy at law, prays for an order and judgment of this Honorable Court.

"1. Permanently enjoining and restraining defendants herein, Fulton Special Road District of Callaway county, and J. W. Walthall, R. L. Smith and J. L. Maughs, constituting the board of commissioners

of said district, from issuing the bonds of said road district.

"2. Permanently enjoining and restraining the defendants herein, J. W. Walthall as president, and R. L. Smith, as secretary of the board of commissioners of said district, from executing said bonds.

"3. Permanently enjoining and restraining the defendants herein, W. C. Harris, as treasurer of said special road district, from delivering bonds of said district to the purchasers thereof.

"4. Permanently enjoining and restraining William R. Compton Bond & Mortgage Company, one of the defendants herein, from accepting delivery of or making payment for the bonds of said special road district.

"5. And plaintiff prays for such other and further relief to which in equity and good conscience he may be satisfied in this Honorable Court in this cause."

The defendants entered their appearance, and agreed that the cause might be tried at the February, 1912, term of the court.

The demurrer (formal parts omitted) is as follows:

"Now come the defendants, William R. Compton Bond & Mortgage Company, Fulton Special Road District of Callaway county, J. W. Walthall, R. L. Smith and J. L. Maughs, constituting the board of commissioners of Fulton Special Road District of Callaway county, and W. C. Harris as treasurer of Fulton Special Road District, Callaway county, and demur to the petition filed by plaintiff herein for the following reasons:

"First. Said petition wholly fails to state facts sufficient to constitute a cause of action.

"Second. There is no equity on the face of the bill filed by complainant herein.

"Third. Said petition and the matters and things therein stated and set forth are not sufficient in law

nor in equity to entitle the plaintiff to the relief prayed for in the petition nor to authorize the issuance of a restraining order and injunction prayed for therein.

"Fourth. Because the petition on its face discloses that the said defendant Fulton Special Road District of Callaway county, by its board of commissioners, is authorized under the laws and Constitution of the State of Missouri, to issue and sell the bonds and levy the tax for the payment of the principal and interest of the bonds as mentioned in said petition.

"Wherefore, defendants for the reason herein stated pray that the petition be dismissed and that they be permitted to go hence without day and for costs."

I.   The petition and demurrer, as previously set forth, present in a comparatively small compass the facts upon which the several legal propositions involved in this case are predicated, and presented for determination.

Without further statement of the case, we will proceed directly to the consideration of the questions presented for determination, in the order presented by counsel for appellant.

The first insistence of counsel is stated in the following language, viz.:  "It is not within the power of the Legislature, under the Constitution of the State of Missouri, to create special road districts having the powers and functions of the Fulton Special Road District of Callaway county, and Art. 6, Ch. 102, Revised Statutes 1909, as amended, and the Act approved March 18, 1911, authorizing special road districts to issue bonds and providing for the payment thereof, are unconstitutional and void."

The direct question presented by the above insistence has never been passed upon by this court, so far as I have been able to learn, until the case of State ex inf. Prosecuting Attorney v. Heffernan was presented

to Division No. 1, decided June 29, 1912, and reported, 243 Mo. 442. There Commissioner Brown, who wrote the opinion of the court, in discussing this identical question, said: ''That public quasi-corporations constitute legitimate instruments for this class of improvements has never been seriously questioned, their public character being based upon the incidental benefits derived by the public from such improvements.''

That case, as the language quoted indicates, assumed, without deciding, that the act of the Legislature authorizing the incorporation of these special road districts is constitutional, hence it is of but little value as an authority in this case.

While the constitutionality of the road law of 1895, which authorized the creation of these special road districts, as well as the levy and collection of taxes by them, was challenged for several reasons, in the cases of Elting v. Hickman, 172 Mo. 237, and State ex rel. v. Gordon, 197 Mo. 55, yet the power of the Legislature to authorize the creation of public or political corporations, of the character there and here involved, was not presented or discussed by counsel, nor decided by the court. The court and counsel seemed to have assumed that the Legislature possessed the power without discussing or passing upon the question.

Counsel for appellant points to no positive constitutional provision prohibiting the Legislature in terms from creating corporations of the character mentioned and possessing the powers indicated, but the insistence is that such prohibition is clearly inferable from express provisions thereof, bearing upon the objects of their creation, namely, taxation for county and road purposes, etc.

His contention is that under the Constitution and policy of Missouri, as expressed in the decisions of this court, the construction and maintenance of public roads is a proper function of the county; that taxes

for public roads are taxes for county purposes, and consequently, under the Constitution as construed and applied by this court, the Legislature has no power or authority to deprive the county courts of their jurisdiction and control of the construction of public roads and highways in any part of the county and transfer the same to a body of commissioners representing a subdivision of the county, such as these special road districts.

In support of this insistence, we are cited to the following cases: State ex rel. v. Railroad, 101 Mo. 120; State ex rel. v. Railroad, 123 Mo. 72; and State ex rel. v. Railroad, 145 Mo. 596.

Those cases in effect hold: First, that the term "county taxes" includes road taxes within the meaning of the provisions of the Hannibal and St. Joseph Railroad Company, exempting it from county taxes; second, that under the constitutional limitation of taxation, where the county court has made a levy of fifty cents on the hundred dollars valuation of property for "county purposes" a further levy of ten cents by townships for "road purposes" is illegal. And that such is the law whether the county has a regular township organization or is organized into "townships for road purposes;" and, third, that township taxes imposed under the township organization law are taxes for "county purposes" within the meaning of Sec. 11, Art. 10, of the Constitution of 1875, limiting the rate of taxation for such purposes.

The formation of the Fulton Special Road District was had under the provisions of Art. 6 of Ch. 102, Revised Statutes 1909, Secs. 10576 to 10610, as amended. By the first section mentioned, it is declared that the provisions of that section authorizing the incorporation of such districts "shall not apply to counties under township organization;" and by Sec. 10577, as amended by an Act approved March 18, 1911 (Laws 1911, p. 370, Sec. 1), it is declared:

"Every such district organized under the provisions of this article shall be a body corporate and possess the usual powers of a corporation for public purposes and shall be known and styled ' . . . special road district of . . . county,' as may be designated by the county court by order of record, and in that name shall be capable of suing and being sued and of contracting and being contracted with."

It is claimed by counsel that the law under which the Fulton Special Road District of Callaway county and all similar districts are created, is unconstitutional, null and void, for the reason that they are created for the same objects and purposes and are granted the same power and authority to levy and collect taxes that the county courts of the respective counties possess under the Constitution regarding public roads, and the taxes by which they are constructed and maintained.

This claim is predicated upon an idea akin to the one expressed in the maxim *"expressio unius est exclusio alterius;"* that is, that the power and authority to construct, regulate and control the public roads, having been vested in the county courts of the various counties with power to levy and collect taxes in furtherance of that authority, excludes the idea that the Legislature retains any authority to confer those same powers upon any other political corporation or subdivision of the State.

The only constitutional provisions which bear upon this phase of the case, which I have been able to find, are Sec. 36, Art. 6 and Secs. 11 and 12, Art. 10, of the Constitution of 1875. The amendments to the two latter sections are not involved in this case.

Said secton 36 reads: "In each county there shall be a county court, which shall be a court of record, and shall have jurisdiction to transact all county and such other business as may be prescribed by law. The court shall consist of one or more judges, not exceed-

ing three, of whom the probate judge may be one, as may be provided by law."

And said sections 11 and 12, in so far as are here material, read:

"Section 11.   Taxes for county, city, town and school purposes may be levied on all subjects and objects of taxation; but the valuation of property therefor shall not exceed the valuation of the same property in such town, city or school district for State and county purposes. For county purposes the annual rate on property, in counties having six million dollars or less, shall not, in the aggregate, exceed fifty cents on the hundred dollars valuation," etc.

"Section 12.   No county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for State and county purposes, previous to the incurring of such indebtedness."

As previously stated, counsel for appellant insists that in view of the constitutional provision just quoted, as construed by this court in the cases before cited and considered, the Legislature had no power or authority to create or authorize the creation of these special road districts of which the Fulton Special Road District is one, for the reason assigned, that their *functions are in so far as they go, the same, and in consequence thereof are encroachments upon the power and authority invested in the county courts* of the

respective counties, as declared by said sections of the Constitution.

The principal authority cited and relied upon by counsel for appellant, as sustaining this contention is the case of People ex rel. Hon Yost v. Becker, 203 N. Y. 201. The court there had under consideration Laws of New York of 1896, Ch. 812, and Laws of 1901, Ch. 361, purporting to revise and consolidate all previous acts of the Legislature creating the ''area or territory known as Sylvan Beach.'' By the statute authorizing the creation of that territory into a body politic, the owners of real property within the territory were authorized to elect certain officers who should be vested with the powers stated in the act. The president and the trustees of the territory were declared to constitute a board of trustees. These trustees were authorized to construct a drainage and sewer system, establish sanitary, police and fire regulations, prevent fires and immorality, preserve order and control public entertainments, build station houses and lockups, organize and maintain a fire department, exercise the same power as boards of health, enact such regulations as they might deem proper from time to time and enforce them with penalties. Authority was also enforced for the levy and collection of taxes to defray the expenses authorized by the act. The territory was also constituted a separate highway district wherein the trustees should have the powers and perform the duties of commissioners of highways in towns. But the statute did not make the area or territory either a city, town or village within the general system of jurisprudence adopted by the State of New York. Under those facts, the Court of Appeals held that although there was no constitutional provision expressly restricting or limiting the power of the Legislature to create public or municipal corporations of any character or description which it might deem expedient, yet as the New York Constitution constituted

the several counties, cities, towns and villages of the State the civil divisions for political purposes and indispensable to the continuation of the government organized by it, this was equivalent to a direct prohibition against the creation of any other civil divisions vested with similar powers.

After the incorporation of a special road district, the statute provides for the appointment of a board of commissioners. The general power and authority of this board, as to the construction, maintenance and repairs of roads and highways, as declared by Sec. 10585, Revised Statutes 1909, is "sole, exclusive and entire control and jurisdiction over all public highways within its district outside the corporate limits of any city or village therein," etc. Clearly, this statute transfers from the county authorities all authority and control which they previously possessed and exercised pursuant to the Constitution and laws of the State over roads and bridges within such district, and confers the same upon this board of commissioners; and as incidental thereto, all taxes and revenues, from whatever sources derived, which were formerly levied and collected for roads and bridge purposes of such district, are also removed from the care, control and disbursement of the county officials and are by this statute entrusted with other taxes, to the care and expenditure of this board of commissioners.

Counsel for appellant insist that this state of facts is strikingly similar to those that existed in the case cited from the Court of Appeals of New York, and that the law there declared is equally applicable to the case at bar.

In reply to this insistence counsel for respondents contend that the rule announced by the New York Court of Appeals, has no application here. Counsel for respondents view the case at bar from an entirely different standpoint from that taken by appellant. They proceed upon the well-understood principle of

law that a State Constitution is not a grant, but a limitation upon legislative authority. That the power of the Legislature is the sovereign power of the people, and is untrammelled and unlimited except where they have imposed limitations upon it by the Constitution of the State. This is especially true in this State, as has been repeatedly decided by this court, in the following cases, among others, viz.: State ex rel. v. Sheppard, 192 Mo. 497, l. c. 506; State ex rel. v. Warner, 197 Mo. 650, l. c. 656; Ex parte Joseph Roberts, 166 Mo. 207, l. c. 212; Cass County v. Jack, 49 Mo. 196, l. c. 199; Wilson v. Trustees Sanitary District, 133 Ill. 443; People ex rel. v. Becker, supra.

In the latter case, which is cited as an authority sustaining the contention of appellant that the Legislature is without power to create special road districts, the Court of Appeals of New York announces the principle previously stated regarding the absolute power of the Legislature of the State to enact any law it deems proper, except as limited in the Constitution of the State, or of that of the United States; and by a careful consideration of that case it will be seen that it does not sustain the position of the appellant, but is, on the contrary, an authority for the respondents. There, the court in speaking of the territory of "Sylvan Beach," which the Legislature of New York attempted to create into a municipality, said: "It was a legal municipal corporation unless the people of the State had by their supreme and paramount law restrained the Legislature from instituting it. The Legislature may exercise the whole legislative power of the people except as the Constitution expressly or by implication forbids."

By an examination of that case, it will be seen that the territory created by the act of the Legislature, as "Sylvan Beach," was endowed with general police powers of a city or village, classes of municipalities recognized and established by the Constitution of

that State. Not only that, but other and peculiar powers were conferred upon it which were foreign to such cities and villages, and the act of the Legislature thus creating this hybrid corporation with inconsistent and foreign powers called forth the condemnation of that court.

If that case had arisen in this State, under the classification of cities and towns, as authorized by Sec. 7, Art. 9 of our Constitution, it would have been necessary for this court to have held that "Sylvan Beach" was a city or town as therein provided, just as the New York Court did, and not an independent corporation falling outside of said constitutional classification. Thus it would seem the Legislature of that State attempted to create a municipality not embraced within the constitutional classification of cities and towns of that State, just as the Legislature of this State has repeatedly but unsuccessfully attempted to do, by creating a fifth class in this State, as shown by the cases of Owen v. Baer, 154 Mo. 434; St. Louis v. Dorr, 145 Mo. 466; Murnane v. City of St. Louis, 123 Mo. 480.

Viewing the New York case from any standpoint, it is of doubtful authority, but if it lends support to either side of this controversy it seems to us that it favors the respondents,' and not the appellant's position.

It is the consensus of opinion in this country that the Legislature in the creation of municipal and public corporations of every description is absolute and unlimited, in the absence of some specific State or Federal constitutional provision restricting such powers.

The Legislature is vested with the whole power of the State in the absence of some such constitutional limitation; and may establish any public or municipal corporation it deems necessary or expedient in the public interest.

It may also confer upon such corporations such public power and authority as it may deem wise and best. Moreover, it may not only create such public corporations, but it may also change, divide and abolish them at pleasure.

Judge DILLON, in discussing this subject said: "Subject to the constitutional limitations presently to be noticed, the power of the Legislature over such corporations is supreme and transcendent; it may, where there is no constitutional inhibition, erect, change, divide and even abolish them at pleasure, as it deems the public good to require." [1 Dillon, on Municipal Corporations (5 Ed.), Sec. 92, p. 142.] "Parliament may create new corporations, or abolish or alter charters, or impose new ones, at its will and without the consent of the inhabitants. And so may the State Legislatures in this country, if there be no constitutional restriction upon the power." [1 Dillon, on Municipal Corporations (5 Ed.), Sec. 108, p. 181.]

"A municipal corporation is, so far as its purely municipal relations are concerned, simply an agency of the State for conducting the affairs of government, and as such it is subject to the control of the Legislature. That body may place one part of the State under one municipal organization and another part of the State under another organization of an entirely different character." [Williams v. Eggleston, 170 U. S. 310, per Mr. Justice BREWER.]

"These corporations are bodies politic; created by laws of the State for the purpose of administering the affairs of the incorporated territory. They exercise powers of government, which are delegated to them by the Legislature, and they are subjected to certain duties. They are the auxiliaries, or the convenient instrumentalities, of the general government of the State for the purpose of municipal rule. . . . The whole interests are the exclusive domain of the

government itself and the power of the Legislature over them is supreme and transcendent; except as restricted by the Constitution of the State. Their charters being granted for the better government of the particular districts, the right to insert such provisions as seem to best subserve public interests would seem, from the very nature of such institutions, to be inherent." [MacMullen v. Middletown, 187 N. Y. 42, per Gray, J.]

Our Constitution has placed no restriction upon the Legislature as to the form or description of the different public or municipal corporations which may be created by it. It nowhere prohibits the formation of road districts, nor is there to be found in the Constitution any language which limits the power of the Legislature in the creation of any public or municipal body. On the contrary the Constitution contains repeated references to other municipal or public bodies than counties, townships, towns and cities. The following references in the Constitution of Missouri recognize the fact that the Legislature is not restricted in its authority to create public corporations to those specifically named in Sec. 12, Art. 10, of the Constitution, and perhaps others (namely, counties, cities, towns, townships and school districts), to-wit:

"No county, township, city or other municipality shall" subscribe to railroad stock, etc. [Art. 9, Sec. 6.]

"The corporate authorities of any county, city, or or other municipal subdivision of this State, having more than two hundred thousand inhabitants," which has already incurred debt, shall have certain additional powers of taxation. [Art. 9, Sec. 19.]

"The property, real and personal of the State, counties and other municipal corporations" shall be

"No county, city, town or other municipal cor-exempt from taxation. [Art. 10, Sec. 6.]

poration'' shall be released from payment of state taxes. [Art. 10,. Sec. 9.]

"The General Assembly shall not impose taxes upon counties, cities, towns, or other municipal corporations'' for corporate purposes. [Art. 10, Sec. 10.]

"No county, city, town, township, school district, or other political corporation or subdivision of the State'' shall become indebted, etc. [Art. 10, Sec. 12.]

Sec. 47, Art. 6, of the State Constitution, also recognizes the power of the Legislature to create political subdivisions other than county, city, town, township or school districts, and clearly contemplates the legislative exercises of this power. This section provides, among other things: "The General Assembly shall have no power to authorize any county, city, town, or township, or other political corporation or subdivision of the State now existing, or that may be hereafter established, to lend its credit," etc.

In addition to the corporations specifically named, the Legislature has from time to time created with varying powers the following, among other public corporations, viz.: The State University; the various normal schools located in different sections of the State; the various eleemosynary institutions, such as the hospitals for the insane and weak-minded; the schools for the blind and deaf and dumb; drainage and levee districts; public road districts, and perhaps others not called to mind.

This court, in the opinion in the case of State ex rel. St. Joseph Water Company v. Geiger et al., delivered at this sitting, 246 Mo. 74, holds that State Hospital No. 2 located at St. Joseph, Missouri, was a political corporation or a subdivision of the State, within the meaning of said Sec. 12, Art. 10, of the Constitution.

We are, therefore, of the opinion, that the various statutes mentioned and acts of the Legislature referred to, authorizing the creation of these special

road districts, are not unconstitutional, null and void, but are upon the other hand valid existing laws of the State.

II.   Counsel for appellant states his second insistence in the following language:

"Special road districts created under the provisions of Art. 6, Ch. 102, R. S. 1909, as amended, are limited by Sec. 11, Art. 10 of the Constitution and by the Amendment of 1908, to the levy of a tax of twenty-five cents on the $100, for road and bridge purposes, and it is not within the power of the Legislature to confer authority upon special road districts to levy taxes for road and bridge purposes which are independent of and not subject to the limitations contained in these provisions of the Constitution."

The conclusions reached by us in paragraph one of this opinion, must largely control the disposition to be made of this present question.   There it was held that these special road districts created under and by authority of Ch. 102, R. S. 1909, as amended by the Act approved March 18, 1911, are "political corporations or subdivisions of the State" within the meaning of Sec. 12, Art. 10, of the Constitution, and consequently it must also be held that they are not limited by the provisions of Sec. 11 of the same article, or the Amendment thereto of 1908, as to the levy of taxes authorized by the Act approved March 18, 1911.   That act authorizes these special road districts to issue bonds, and confers authority upon them to levy taxes for the purpose of paying the principal and interest of bonds so issued by them.   That authority is unlimited by the statute empowering the districts to issue the bonds, except as therein stated.

That statute provides (Laws 1911, p. 371, Sec. 1): "The board of commissioners of the special road districts of this State heretofore or hereafter organized are hereby authorized to issue road bonds for and on

behalf of their respective special road districts to an amount, including existing indebtedness, of not exceeding five (5) per centum of the assessed valuation of such special road district," etc.

It is shown by the pleadings in this case, and it stands admitted, that the proposed issue of $100,000 of bonds is not in excess of five per centum of the assessed valuation of taxable property in the district, as ascertained by the assessment next before the last, and therefore does not exceed the statutory limitation.

Said Act of March 18, 1911, further provides (page 372) that: "The board of commissioners shall . . . provide for the levy and collection of a direct annual tax upon all the taxable property in said district sufficient to provide for the payment of the principal and interest of the bonds so authorized as they respectively become due."

This statute only limits the amount of the bonded indebtedness the district may incur, but there is no limitation as to the amount of taxes it may levy, except that it shall be sufficient for the payment of the principal and interest of the bonds, as they become due."

And clearly the limitations contained in Sec. 11, Art. 10, of the Constitution of 1875, and the amendment thereto adopted in the year 1908 (Laws 1909, p. 911, Sec. 1), have no application to such corporations. That section and the amendment thereto limit its application in express terms to "Taxes for county, city, town, and school purposes," and for no other purpose. This has been expressly so held in the case of Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, l. c. 216. The court, speaking of Secs. 11 and 12, Art. 10 of the Constitution and of the limitations contained in each of these sections, says: "The two sections are component parts of a system of financiering which experience pointed out as furnishing a safer course than had been previously followed. Two

great objects were in view, and each of the sections treats of one of them. One object was to limit the rates of taxation for raising the annual revenue required for local purposes; the other, to limit the power to incur indebtedness beyond the annual income and revenue provided for in one year. Section 11 deals with rates of taxation for annual revenue which may be applied by the local authorities to meet 'the ordinary and current expenses' of the local government. [Book v. Earl, 87 Mo. 252.] Section 12 deals with the subject of indebtedness, its limitation and the ways and means to meet it when assumed.''

We, therefore, rule this insistence against the appellant.

III. It is next contended by counsel for appellant, that the taxing power of the respondent is so limited by the Constitution that it will be ''wholly inadequate to provide funds to pay the principal and interest of the bond issue specified in the complaint herein.''

This is but the statement of the law as applicable specially to the respondent, while the statement of it in paragraph two was an announcement of the law by counsel for appellant, as applied to the special road districts in general.

If the conclusions there announced are correct, then this insistence must, for the same reasons, be ruled against the appellant; which is accordingly so done.

IV. The fourth proposition presented for determination is that: ''The special tax of twenty-five cents on each $100 permitted to be levied by the amendment (of Sec. 11, Art. 10) to the Constitution of 1908 (Laws 1909, p. 906), even if it were adequate, cannot be used for the purpose of paying principal and interest of the bonds sought to be issued, for the reason that the constitutional amendment authorizing that tax

specifically provides that the tax shall be used for road and bridge purposes, but for no other purposes whatever."

This is a misconception of this amendment, which is the first amendment made to said Sec. 11, Art. 10, and appears on page 906 of Laws of 1909. This amendment has nothing whatever to do with the taxes, bonds, etc., previously discussed, but was designed as an additional means by which the public roads generally of the county might be improved.

These special road districts are newly-born citizens, dressed by the Legislature in their own garbs, and they possess only such authority and rights as are expressly conferred upon them by the statutes of their creation.

This proposition is decided against appellants.

V. Under the views of the court as expressed in paragraphs one and two, the propositions stated by counsel for appellant, in paragraphs five and six of his brief and argument, are no longer pertinent to the case, and for that reason they will receive no further consideration at our hands.

For the reasons stated, the judgment of the circuit court should be affirmed, and it is so ordered.

All concur, except *Ferriss, J.,* who is absent.