THE PEOPLE OF THE STATE OF NEW YORK ex rel. TOWN OF PELHAM et al., Respondents, v. VILLAGE OF PEL-HAM et al., Appellants.

Constitutional law — home rule provision of State Constitution (Art. 10, § 2) — rights of incorporated villages thereunder — Westchester County Tax Act (L. 1914, ch. 510) — provisions thereof which take away from incorporated villages their rights to assess and levy taxes unconstitutional and void.

1. Section 2 of article 10 of the State Constitution provides that " All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division

thereof, or appointed by such authorities thereof, as the legislature shall designate for that purpose." This section embodies the home rule principle under which the right of self-government is secured to the localities of the state. It includes those rights of self-government which relate to the assessment and collection of taxes for village purposes which the villages enjoyed prior to the adoption of the present Constitution. Taxation for such a local purpose is the concern of the village rather than the town, county and state of which the village is an authorized subdivision, and within this limited local sphere the right to control the assessment and taxation of property for village purposes is a right which the village enjoys by virtue of the home rule provision of the Constitution. While the legislature has power to provide for the organization of cities and incorporated villages and to restrict their power of taxation, assessment, borrowing money and contracting of debts, so as to prevent abuses in assessments and in contracting debt, it cannot take away those local rights of self-government which the municipal corporation enjoyed when the present Constitution was adopted.

2. The Westchester County Tax Act (L. 1914, ch. 510), which establishes a new and complete scheme for the assessment and collection of taxes within each town in Westchester county, provides that there shall be but one board of assessors in and for each town who shall make and prepare all assessment rolls for the purpose of taxation within the town, whether for state, county, town, village or any tax district purpose; that a receiver of taxes shall be elected or appointed in each town whose duty it shall be "to collect all state, county, town, village, school and district taxes and assessments levied or assessed upon any taxable property within said town for the state, county, town, incorporated villages or any tax districts or part thereof therein," and the only duty left to the officers of incorporated villages in relation to the assessment and collection of taxes for village purposes is that the board of trustees of such villages may fix and determine the amount of the annual tax of each village. *Held*, that these and similar provisions are an invasion of the local rights of the incorporated villages within the county in violation of the home rule provision of the Constitution, and that, therefore, such provisions of the act as attempt to deprive incorporated villages of their right to assess and collect taxes for village purposes are unconstitutional and void.

*People ex rel. Town of Pelham* v. *Village of Pelham*, 166 App. Div. 779, reversed.

(Argued May 31, 1915; decided June 18, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 19, 1915, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the defendants, the village of Pelham and the treasurer of said village, to certify to the receiver of taxes of the town of Pelham all village taxes and assessments, as required by the provisions of chapter 510 of the Laws of 1914.

The facts, so far as material, are stated in the opinion.

*Benjamin L. Fairchild* and *Robert L. Luce* for appellants. The Westchester County Tax Act is invalid in that it violates section 2, article 10 of the Constitution of the state of New York, known as the home rule provision of the Constitution. (*People ex rel. Bush* v. *Houghton*, 182 N. Y. 301; *People* v. *Raymond*, 37 N. Y. 428; *People* v. *Draper*, 15 N. Y. 522; *People ex rel. Albertson* v. *Bolton*, 55 N. Y. 50; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Board of Health* v. *Heister*, 37 N. Y. 655; *Devoy* v. *Mayor*, 36 N. Y. 449; *People* v. *McKinney*, 52 N. Y. 374; *Rathbone* v. *Wirth*, 150 N. Y. 450; *Matter of Brenner*, 170 N. Y. 185; *People ex rel. Werner* v. *Prendergast*, 206 N. Y. 405; *Matter of Town* v. *Porter*, 128 App. Div. 717.)

*Daniel E. Kelly* and *Robert L. Luce* for village of Rye, intervening.

*Edgar C. Beecroft* for respondents. Chapter 510 of the Laws of 1914 does not violate the provisions of section 2 of article 10 of the State Constitution, but is in harmony therewith. (*People* v. *Morris*, 13 Wend. 325; *People* v. *Pinckney*, 32 N. Y. 377; *People* v. *Shepard*, 36 N. Y. 285; *Matter of Mayor*, 99 N. Y. 583; *Met. Board of Health* v. *Heister*, 37 N. Y. 661.)

*William A. Davidson* for county of Westchester, intervening. The act in question does not violate sec-

tion 2 of article 10 of the State Constitution.  (*People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *Genet* v. *City of Brooklyn,* 99 N. Y. 296; *Matter of White,* 208 N. Y. 64; *Astor* v. *Mayor, etc.,* 62 N. Y. 567; *People ex rel. Simon* v. *Bradley,* 207 N.Y. 592; *Wilcox* v. *McClellan,* 110 App. Div. 378; *People ex rel. Devery* v. *Coler,* 71 App. Div. 584; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.,* 174 N. Y. 417; *Gautier* v. *Ditmar,* 204 N. Y. 28.)

SEABURY, J.  The Westchester County Tax Act (Chap. 510 of the Laws of 1914) contains a complete scheme for the assessment and collection of taxes within each town in Westchester county.  The act provides that there shall be but one board of assessors in each town of Westchester county, who shall be elected or appointed in the manner prescribed by law from time to time, for the election or appointment of town assessors.  It requires such board of assessors to make and prepare all assessment rolls for the purpose of taxation within their respective towns, whether for state, county, town, village or any tax district purpose or purposes.  It requires also that the assessors shall be residents of the town, but not necessarily of any other tax district for which they may be required to make an assessment.  (Art. II, section 1.) The board of assessors, in addition to discharging the requirements contained in the General Tax Law, are required to make the assessment for each separate tax district in any town and whenever necessary make an apportionment of the assessment of the property between or among the tax districts in which such property is located.  (Art. II, section 3.)  After the lawful authorities in each tax district shall have fixed the amount of taxes to be raised for such district, the proper authorities of such district, "including the board of trustees of each village in each township" are required to certify to the supervisor of each township the amount of such tax, including all special assessments, and it is made the duty

of the supervisor to extend or cause to be extended the amount of tax against each particular person and property in each tax district, extending the state, county, town and town district tax, unless previously extended, in one of the two copies of the assessment rolls delivered to him by the board of assessors, and the village and school tax in the other copy of such assessment roll. Provision is made for the publication of notice of the extension of such tax, and that after a specified time it shall be absolute and incontestable. (Art. III, section 1.) Provision is made that such taxes, including taxes for village purposes, shall become a lien upon the property affected. (Art. III, section 2.) It is further provided that "The amount of the annual tax of each village shall be fixed and determined, as the law provides, by the board of trustees of each village, together with the special assessments, and shall be certified to the supervisor of each town before June first in each year." (Art. III, section 3.) The act provides that a receiver of taxes shall be elected or appointed in each town in place of a collector of taxes, whose duty it shall be "to collect all state, county, town, village, school, and district taxes and assessments levied or assessed upon any taxable property within said town for the state, county, town, incorporated villages or any tax district or part thereof therein." Such receiver of taxes is required to be a resident of the town but not necessarily a resident of any other tax district for which he may be required to collect taxes or assessments. (Art. IV, section 1.) Under the provisions of this act the supervisor is directed to deliver to the receiver of taxes three separate warrants for the collection of taxes, as follows: One warrant for the collection of state, county, town and and town district taxes, *one warrant for the collection of village taxes* and one warrant for the collection of school taxes. Detailed provisions as to the receipt of taxes and collection of assessments, the collection of taxes and assessments in arrears, and the sale of lands for non-

payment of taxes and proceedings thereunder are prescribed. Under this act the only duty left to the board of trustees of the villages in relation to the assessment and collection of taxes for village purposes is that such board of trustees may fix and determine "the amount of the annual tax of each village." (Art. III, section 3.) All, other duties in reference to the assessment and collection of village taxes for village purposes are transferred to the town officials designated in the act. From those of its provisions which have already been mentioned, it is evident that the purpose of the act, so far as villages are concerned, is to withdraw from local village officials the power to assess and collect taxes for village purposes and to transfer these duties to town officials.

The constitutionality of the Westchester County Tax Act is challenged upon several grounds. It will only be necessary to consider one of the grounds urged. It is claimed that the act in so far as its provisions affect the assessment and collection of taxes within the incorporated villages of Westchester county for village purposes, is in violation of section 2 of article 10 of the Constitution of the state. In this section it is provided that "All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the Legislature may direct."

Embodied in this section is the home rule principle under which the right of self-government is secured to the localities of the state. It includes those rights of self-government which relate to the assessment and collection of taxes for village purposes which the villages enjoyed prior to the adoption of the present Constitution. Taxation

for such a local purpose is the concern of the village rather than the town, county and state of which the village is an authorized subdivision. Within this limited local sphere the right to control the assessment and taxation of property for village purposes is a right which the village enjoys by virtue of the home rule provision of the Constitution. It is not merely a privilege which the village is permitted to exercise by the courtesy of the legislature. The legislature has the power to " provide for the organization of cities and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and in contracting debt by such municipal corporations " (Art. XII, section 1 of the Constitution), but it cannot take away those local rights of self-government which the municipal corporation enjoyed when the present Constitution was adopted. The history of the home rule principle from early times down to the present and under the different Constitutions which have existed in this state, was carefully traced by Judge VANN in the opinion of this court in *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.* (174 N. Y. 417). It has frequently been the subject of discussion by this court. Its meaning and scope cannot be better shown than by setting forth the comments which have been made upon it in the decision of cases arising under it.

In *People* v. *Raymond* (37 N. Y. [1868] 428, 431) GROVER, J., said: " The plain intention of the section of the Constitution in question, was to preserve to localities the control of the official functions of which they were then possessed, and this control was carefully preserved consistent with the power of the legislature to make needful changes by restricting the power of appointment of other officers to perform the same functions to the people, or some authority of the locality.".

In *People ex rel. Williamson* v. *McKinney* (52 N. Y. [1873] 374, 378) Judge ANDREWS said: " The obvious pur-

pose of the provision of the Constitution which has been quoted was to secure to the people of the cities, towns or villages of the state the right to have their local offices administered by officers selected by themselves, and in no case was it to be done by officers appointed by the direct action of the legislature. The power of the legislature over the subject was not wholly withdrawn. It was left to the legislature to decide as to which of the two modes of selection should be adopted. It could change the mode of selection from an election to an appointment by local authorities, or from an appointment to an election. It could declare the duration of the term of office in cases where the Constitution was silent; it could shorten the term of an incumbent of the office, and could abolish the office itself unless it existed by force of the Constitution. But it could not appoint a city, town or village officer, in any case where the office existed at the adoption of the Constitution."

In *People ex rel. Bolton* v. *Albertson* (55 N. Y. [1873] 50, 56) Judge ALLEN said: "The purpose and object of section 2 of article 10 of the Constitution, as is very obvious, was to secure to the several recognized civil and political divisions of the State the right of local self-government, by requiring that all county, city, town and village officers, whose election or appointment was not provided for by the Constitution, save those whose offices might thereafter be created by law, should be elected by the electors of the respective municipalities, or appointed by such authorities thereof as the legislature should designate. As to offices known and in existence at the time of the adoption of the Constitution, this provision is absolute in its prohibition of an appointment by the central government or its authority, or by any body other than the local electors, or some local authority designated by law. Faithfully observed, and effect given to it in its spirit as well as in its letter, it effectually secures to each of the governmental divisions of the State the right of

choosing or appointing its own local officers, without let or hindrance from the State government, and none can be deprived of the rights and franchises thus guaranteed to all. The theory of the Constitution is, that the several counties, cities, towns and villages are, of right, entitled to choose whom they will have to rule over them; and that this right cannot be taken from them and the electors and inhabitants disfranchised by any act of the legislature, or of any or all the departments of the State government combined."

In *Rathbone* v. *Wirth* (150 N. Y. [1896] 459, 468) Judge Gray said: " It ought not to require much of argument to show the importance of this clause in our Constitution, or what its presence means for our political institutions. Its very presence in the Constitution of the State since 1846 evidences the importance which the people attach to the preservation of this right in the management of their local affairs. It means the right to choose their local officers, in all its reality; or it means nothing. If it does not mean that the people have reserved the right of administering existing local offices by officers of their own choosing, whether it be done, directly, through an election, or indirectly, through the method of an appointment by some of their local authorities, I am at a loss to understand its significance, or in what consists its peculiar value." In the same case (p. 487) Judge O'Brien said: " The true interpretation, scope and meaning of this section of the Constitution has been frequently passed upon by this court, and it has been uniformly held that its obvious purpose was to secure to the people of the cities, towns and villages of the state the right to have the local offices administered by officers selected by themselves. It was designed to protect and give force and effect to the principle of local self-government which has always been regarded as fundamental in our political institutions, and to be the very essence of every republican form of government. The local government, even

in the smallest division of the state, is the preparatory school in which the citizen acquires the rudiments of self-government, and hence these institutions have been justly regarded as the nurseries of civil liberty."

In *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.* (174 N. Y. [1903] 417, 434) Judge VANN, after reviewing in detail the home rule provision as it was expressed in the different Constitutions of the state, said: "These and other commands of the different Constitutions, when read in the light of prior and cotemporaneous history, show that the object of the people in enacting them was to prevent centralization of power in the state and to continue, preserve and expand local self-government. This was effected through a judicious distribution of the power of selecting public officers, by assigning the choice of local officers to the people of the local divisions, and to the people generally, those belonging to the state at large. The management of the local political business of localities, whether as large as a county or as small as a village, is intrusted to local officers selected by the communities where those officers act and through which their jurisdiction extends. The principle of home rule is preserved by continuing the right of these divisions to select their local officers, with the general functions which have always belonged to the office. Unless the office, by whatever name it is known, is protected, as the courts have uniformly held, the right to choose the officer would be lost, for with his former functions gone he would not be the officer contemplated by the Constitution, even if the name were retained. Unless the office or officer is mentioned *eo nomine* in the Constitution, the name may be changed, or the office abolished, provided the functions, if retained at all, remain in some officer chosen by the locality. Local functions, however, cannot be transferred to a state officer. The legislature has the power to regulate, increase or diminish the duties of the local officer, but it has been steadfastly held that this power is subject to

the limitation that no essential or exclusive function belonging to the office can be transferred to an officer appointed by central authority. The office may go, but the function must be exercised locally if exercised at all. While no arbitrary line is drawn to separate the powers of local and state officers, the integrity of the local office is protected, with its original and inherent functions unimpaired. It is interference, whether direct or indirect, with the vital, intrinsic and inseparable functions of the office as thus defined and understood that the Constitution prohibits."

In *People ex rel. Bush* v. *Houghton* (182 N. Y. [1905] 301, 305) Judge GRAY, after considering whether or not the officers of a city were local, in answer to the argument that such officers were officers of the general public rather than the servants of the municipal corporation, said: "I think that the question does not turn so much upon whether the officers are the servants, or agents, of the city, as upon whether their offices were created for the city, unconnected with any other territory."

These cases establish that each of the political subdivisions specified in section 2 of article 10 of the Constitution are within the protection of the home rule principle embodied in that constitutional provision and that the local rights of self-government exercised by each of those political subdivisions prior to the adoption of the present Constitution are accorded immunity from legislative invasion.

In the first Constitution of the state, with few exceptions, the power to choose public officers was vested in the council of appointment, which was composed of the governor and four senators chosen by the assembly. (3 Lincoln's Const. Hist. of N. Y. 614; art. XXIII of Const. of 1777; *People* v. *Foot*, 19 Johns. 58.) This provision was a natural evolution from the method by which public officers were chosen under the colonial government. It afforded little opportunity for the operation of

the home rule principle.   The council of appointment did
not receive public approval and its existence furnished one
of the reasons for calling the convention of 1821.   (1 Lin-
coln's Const. Hist. of N. Y. 622.)   In the constitutional
convention of 1821 the report of Mr. Van Buren urging
its abolition was adopted.   (1 Lincoln's Const. Hist. of
N. Y. 749.)   The Constitution of 1821 contained a pro-
vision designed to promote home rule, which provided
that " All officers heretofore elective by the people shall
continue to be elected; and all other officers whose
appointment is not provided for by this Constitution, and
all officers whose offices may be hereafter created by law,
shall be elected by the people, or appointed, as may by
law be directed."   (Article 4, section 15.)

In 1790 the first charter for the incorporation of a vil-
lage in this state was granted to the village of Lansing-
burg.   (Laws of 1790, chap. 49.)   While the Constitution
of 1821 did not secure the right of self-government to
villages, it nevertheless by its provisions recognized vil-
lages together with counties, towns and cities as subor-
dinate governmental divisions.   The third Constitution
(1846) adopted the provision which is now embodied in
section 2 of article 10 of our present Constitution, thus
bringing villages within the operation of the home rule
principle to the same degree that that principle operated
to include cities and towns.   The Constitution of 1846
also contained a provision requiring the legislature to
" provide for the organization of cities and incorporated
villages."   This provision did not do away with the power
to incorporate villages by special act.   In 1847, however,
the legislature enacted a general law for the incorpora-
tion of villages which provided for their incorporation
upon the order of the Court of Sessions, approved by a
vote of the people of the proposed village and without
application to the legislature.   (Laws of 1847, c. 426.)
Another general village law was enacted in 1870.   (Laws
of 1870, chap. 291.)   In 1874 a constitutional amendment

was adopted prohibiting the incorporation of villages by special act. The General Village Law of 1870 continued in operation with the amendments that were made to it until it was superseded by the new Village Law of 1897. (3 Lincoln's Const. Hist. of N. Y. 618.)

In *People ex rel. Hon Yost* v. *Becker* (203 N. Y. 201, 208) Judge COLLIN, after referring to the history of the laws relating to villages, said: " From this brief review of the parts of the Constitution which relate to the instrumentalities and methods of local government, it is apparent that it constitutes the counties, cities, towns and villages of the state the civil divisions for political purposes and indispensable to the continuation of the government organized by it." This review makes plain the gradual but consistent growth of the home rule principle and discloses the manner in which it has been extended by the people of this state, so as to place the villages of the state securely within its protection. Thus, under our present Constitution, the village, while the smallest political subdivision established by the Constitution, is as secure in its right to the enjoyment of local government as are the cities and towns of the state. It remains to · be determined whether the Westchester County Tax Act deprives the incorporated villages within Westchester county of the rights of local self-government which they enjoyed when our present Constitution went into effect on January 1st, 1895. The rights and powers of the officers of villages prior to that time are defined in the act of 1870 (Chap. 291 of the Laws of 1870) and the acts amendatory thereto. It is necessary to examine the provisions of the act of 1870. In title 2, section 3, of that act, provision is made for the annual election by the electors of the village of a president, three trustees, a treasurer and a collector. In section 8 of that title it is provided that " No person shall be eligible to any office unless he shall be at the time a resident and an elector of the village." Section 13 of that title provides for holding tax

meetings by those entitled to vote.  Section 13 of title 3
provides that the trustees, or a majority of them, shall
act as assessors of the village and that the trustees so
acting as assessors shall have the power of town assessors
and be subject to the laws applicable to the same subject
to the provisions of this act.  Section 16 of that title
empowers the trustees to raise money for authorized
expenditures.  Section 5 of title 5 provides that the col-
lector shall collect and receive all taxes and assessments
for which the warrant of the board of trustees shall be
delivered to him and shall pay the same into the hands
of the treasurer.  Section 1 of title 6 provides that the
trustees "whose duty it shall be by this act to act
as assessors" must, within the time specified, assess the
inhabitants, corporation and property liable to assessment
and taxation within the village to defray the ordinary
expenses of the village for the current year.  Section 6 of
that title authorizes the sale of land for unpaid taxes and
assessments.  Section 5 of title 8 makes provision for the
return of unpaid taxes by the collector of the village.
Such were the provisions of law applicable to incorporated
villages on the first day of January, 1895, when the pres-
ent Constitution went into effect.  It is manifest from the
statement made above as to the provisions of the West-
chester County Tax Act that these functions formerly
performed by the local authorities are taken away from
such village authorities and vested in the officials of the
township.  Thus under the provisions of that act a par-
ticular incorporated village may be assessed and taxed for
village purposes by a board of assessors none of whom
are residents of that village.  The powers of the board of
trustees in so far as they are required to act as village
assessors are entirely abrogated, and the powers formerly
discharged by those officials are vested in the officers
of the township.  The right which was secured to
each village to have its village taxes collected by a
collector elected by the qualified voters of the village

is taken away and the duty of collecting taxes is vested in a receiver of taxes elected or appointed by the township of which the incorporated village is a part. These and similar provisions leave no doubt that the local rights of self-government, among which is the right to assess and collect taxes for village purposes, which is secured by the Constitution, is attempted to be invaded by the provisions of the Westchester County Tax Act. Such an invasion of the local rights of the village is in direct violation of the home rule provision of the Constitution. It follows, therefore, that such of the provisions of the Westchester County Tax Act as attempt to deprive incorporated villages of their right to assess and collect taxes for village purposes, are in contravention of the Constitution and void. The constitutionality of the act is sought to be sustained upon the ground that the act in question contemplates merely a different mode or manner in which taxes are assessed and collected, and creates a new district of assessment and of collection. A study of its provisions, however, makes it clear that the act goes far beyond this limit. It not only prescribes a new mode and manner of assessment but strips the local village officials of every vestige of authority which they formerly possessed in this respect, except the right to fix and determine the amount of the annual tax. The important functions of assessment and collection are entirely taken away from the village authorities. Nor does it create a new district. It simply transfers the powers of one political subdivision of the state in regard to local taxation to the officials of a separate and distinct political subdivision. The fact that the village is included within the town does not make the act a lawful exercise of legislative power. If the legislature may thus deprive villages of the right of local self-government, cities and towns may also be deprived of similar rights. If this practice can be lawfully pursued in reference to the smallest political subdivision recognized by the Constitution, it may be adopted in ref-

erence to the other political subdivisions specified in the Constitution. If this may lawfully be done the home rule principle of the Constitution is rendered nugatory and the principle of local self-government or home rule is entirely subject to legislative discretion. After considering the act from every viewpoint and endeavoring to ascertain whether it could not be viewed from some aspect in which it could be reconciled to the Constitution, we have been forced to conclude that a reconciliation of its provisions with those of the Constitution is impossible. This antagonism between the Constitution and those provisions of the act which invade the local rights of self-government of incorporated villages condemn those of its provisions as unconstitutional and void.

The order appealed from should be reversed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, CUDDEBACK, HOGAN and MILLER, JJ., concur.

Order reversed.