VILLAGE OF KENMORE and CHARLES L. LOWELL, as Receiver of Taxes and Assessments, and as Treasurer of Said Village of Kenmore, Plaintiffs, v. THE COUNTY OF ERIE and Others, Defendants.

Supreme Court, Erie County, July 5, 1929.

*Frank C. Moore* and *Simon Fleischmann,* for the plaintiffs.

*M. Edwin Merwin.* [*Jacob Tick* of counsel], for the defendants.

HARRIS, J. This action is brought in equity by the village of Kenmore in Erie county and its receiver of taxes and its treasurer for the purpose of compelling the defendants to levy and collect, as part of the county taxes of Erie county for the year 1929, the sum of $233,308.02, that being the amount of unpaid village taxes in the village of Kenmore for the fiscal year beginning March 1,

1928, and to pay such amount over to the plaintiffs, and to take all official action necessary to that end, including the preparation of county tax rolls and imposing and relevying the amount of such unpaid village taxes against the several properties on which they were originally levied. The alleged right of the plaintiffs to obtain such relief is based on sections 126-a to 126-e, both inclusive, of the Village Law (added by Laws of 1927, chap. 650, as amd. by Laws of 1928, chaps. 39 and 708). In substance, these sections provide that the board of trustees of each village in the State of New York shall, not later than the first day of November in each year, return to the county treasurer in which such village is located, a statement of the amount of the uncollected taxes in such village for that particular year; thereafter it becomes the duty of the county treasurer, out of any moneys in the county treasury raised for contingent expenses, or for the purpose of paying the amount of taxes so returned unpaid, to pay to the treasurer of the village the amount of such unpaid taxes, and in the event that there are no moneys in the county treasurer's hands applicable to such purposes, the board of supervisors are directed, after relevying such unpaid taxes, to pay to the village treasurer the amount thereof, by voucher or draft on the county treasurer, in the same manner as other charges are paid; such relevy is to be by the board of supervisors and is to be upon the lands on which the same were originally imposed. Such unpaid taxes are to be collected by the county to reimburse the county for the amount so expended.

The complaint alleges that of the village tax roll amounting to $591,767.54 for the fiscal year 1928–1929, the tax roll of which was delivered to the village treasurer on or about the 22d day of May, 1928, there remained uncollected by the village treasurer, on November 1, 1928, the sum of $233,308.02; that the board of trustees, prior to November 1, 1928, demanded that the county treasurer pay to the village treasurer such unpaid sum of taxes and that he refused to make such payment. The answer admits the material allegations of the complaint with respect to the levying of the tax, the amount thereof collected, the return to the county treasurer of such uncollected amount and the refusal of the county treasurer to pay the same. Further, the answer affirmatively alleges that the foregoing cited provisions of the Village Law are unconstitutional in that sections 126-d and 126-e violate section 10 of article 8 of the State Constitution, and in that sections 126-a to 126-e, inclusive, violate section 2 of article 10 of the State Constitution, more familiarly known as the Home Rule provision of such Constitution. On trial, the defendants raised the further constitutional question that the sections of the Village Law, referred

to above, violate the provisions of the Federal and State Constitutions forbidding the depriving one of property (in this instance the county of Erie) without due process of law.

The issues of fact and of law, as presented by the complaint and answer, were tried at the March, 1929, Erie County Equity Term of this court.

The only questions presented on the trial and considered by the court are those as to the constitutionality of the provisions of the Village Law, as added in 1927, from and concerning which this controversy arose. In view of the questioning of the constitutionality of such legislation, and in view of the provisions of section 68 of the Executive Law (as amd. by Laws of 1913, chap. 442), the court directed the Attorney-General of the State to be notified of the pendency of this action. Taking the position that both sides of the controversy were represented by able counsel, and that all of the taxpayers have an interest, one way or the other, in the matter at issue, the chief law officer of the State advised the court that he did not care to be heard on the issue.

It appeared upon the trial that such amendments gained their origin from a village tax commission appointed by the Legislature for the purpose of ascertaining a remedy for what were deemed to be defects in the methods of collection of village taxes in the various villages of the State, the claimed results of these defects being the inability of the villages, under the old law, to properly enforce the collection of village taxes, partly because such laws did not provide, in the opinion of the commission, effective means for collecting such taxes, and partly due to the fact that few, if any, villages had the officers and machinery necessary to effectively collect such taxes. It is further argued that such legislation reduces expenses, avoids confusion in tax titles and simplifies the process of examining titles. There is no doubt in the mind of the court that such reasons and the bases thereof would and should appeal to the Legislature, if it had a right by legislation to correct such a situation. However, if the amendments adopted for the purpose of correcting such situations violate one or more provisions of the State Constitution or of the Federal Constitution, such amendments must be declared to be invalid.

To this court it appears that the outstanding question in reference to the constitutionality of the sections above quoted centers about the contention that such amendments violate section 2 of article 10 of the State Constitution, which section is as follows: " All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or

appointed by such authorities thereof, as the Legislature shall designate for that purpose. All other officers, whose election or appointment is not provided for by this Constitution, and all officers, whose offices may hereafter be created by law, shall be elected by the people, or appointed as the Legislature may direct."

It is apparent that the object of such section of the Constitution was and is to preserve to the cities, towns and villages the right to select those persons to whom is committed the transaction of the particular business of such cities, towns and villages. This provision continued in being the principle of home rule or the right of self-government, as to local affairs, which has ever been a cardinal principle and right of the American people, including even its smallest communities.

In passing on the question as to whether or not the sections of the Village Law above quoted violate section 2 of article 10 of the Constitution, this court has been much aided by the discussion of the origin and the history of the principles of home rule by the learned Judge Vann of the Court of Appeals in *People ex rel. Metropolitan Railway Company* v. *Tax Commissioners* (174 N. Y. 417, 431–435, inclusive). To the mind of this court the following quotation from the above cited case is directly in point in the consideration of the application of section 2 of article 10 of the State Constitution to the action at bar:

" These and other commands of the different Constitutions, when read in the light of prior and cotemporaneous history, show that the object of the people in enacting them was to prevent centralization of power in the state and to continue, preserve and expand local self-government.

" This was effected through a judicious distribution of the power of selecting public officers, by assigning the choice of local officers to the people of the local divisions, and to the people generally, those belonging to the state at large. The management of the local political business of localities, whether as large as a county or as small as a village, is intrusted to local officers selected by the communities where those officers act and through which their jurisdiction extends. The principle of home rule is preserved by continuing the right of these divisions to select their local officers, with the general functions which have always belonged to the office. Unless the office, by whatever name it is known, is protected, as the courts have uniformly held, the right to choose the officer would be lost, for with his former functions gone he would not be the officer contemplated by the Constitution, even if the name were retained. Unless the office or officer is mentioned *eo nomine* in the Constitution, the name may be changed, or the office abolished,

provided the functions, if retained at all, remain in some officer chosen by the locality. Local functions, however, cannot be transferred to a state officer. The legislature has the power to regulate, increase or diminish the duties of the local officer, but it has been steadfastly held that this power is subject to the limitation that no essential or exclusive function belonging to the office can be transferred to an officer appointed by central authority. The office may go, but the function must be exercised locally if exercised at all. While no arbitrary line is drawn to separate the powers of local and state officers, the integrity of the local office is protected, with its original and inherent functions unimpaired. It is interference, whether direct or indirect, with the vital, intrinsic and inseparable functions of the office as thus defined and understood that the Constitution prohibits."

It cannot be doubted that the sections of the Village Law, hereinbefore referred to (and which are obligatory on the villages), take from the village officers the right and duty of collecting all village taxes which are unpaid at the time of the return of the warrant for their collection, and commit the collection of such taxes to the county officers, who can, by no stretch of the imagination, be called village officers. These sections thus deprive such village officers of a portion of their functions and, to the mind of this court, a very essential portion of such functions. If the Legislature has the power to do this, it then has the power to deprive said village authorities entirely of the function of collection of taxes and by so doing to deprive the village itself of the right to select the officer or the officers who shall collect its taxes. Such legislation clearly violates the underlying principles of section 2 of article 10 of the State Constitution. This conclusion is reinforced by the thought and the decision of the learned Court of Appeals in *People ex rel. Town of Pelham* v. *Village of Pelham* (215 N. Y. 374).

This court having reached the conclusion that such sections, in depriving the village authorities of the function of collecting at least a portion of the village taxes for the year, violate the provision of section 2 of article 10 of the State Constitution, is, therefore, compelled to declare such sections to be unconstitutional and invalid, and to dismiss the complaint of the plaintiffs on such ground. Therefore, it becomes unnecessary to discuss the further questions raised by the defendants as to the unconstitutionality of such Village Law sections by reason of claimed violations of other sections of the State Constitution and of the Federal Constitution.