VILLAGE OF KENSINGTON, Respondent, *v.* THE TOWN OF NORTH HEMPSTEAD and Others, Appellants.*

Second Department, June 24, 1932.

*G. Burchard Smith* [*Le Roy G. Edwards* with him on the brief], for the appellants Town of North Hempstead and town officials.

*Alfred T. Davison* [*Orrin G. Judd* and *Addison B. Scoville* with him on the brief], for the appellant Board of Park Commissioners of Great Neck Park District.

*George R. Brennan,* for the respondent.

HAGARTY, J.   The theory of the action is to restrain the defendants from assessing, extending, levying or collecting any tax or taxes upon any property or properties within the plaintiff Village of Kensington, on behalf of or for the Great Neck Park District, except to cover the proportionate liability of such property for the bonded indebtedness of the Great Neck Park District which was incurred prior to November 7, 1921, the date of the incorporation of the village of Kensington.   The relief sought was granted by the judgment under review, entered upon orders in favor of the plaintiff and against the defendants.

Great Neck Park District of the town of North Hempstead, hereinafter referred to as the park district, was established on the 14th day of August, 1916, under article 17-B of the Town Law (added by Laws of 1916 chap. 54), and ever·since that time it has maintained parks within the entire park district so established, and has exercised all the functions necessary and appropriate to that purpose throughout the district.

The plaintiff village was incorporated under article 2 of the Village Law on the 7th day of November, 1921, all the territory of which lies within the boundaries of the park district as the park district was established at the time of its creation on the 14th day

of August, 1916. The assessed valuation of the park district, including the territory of the plaintiff, in 1929 was $38,253,493, and of the plaintiff, $5,265,800. Prior to the incorporation of the plaintiff, the town board of the town of North Hempstead issued, pursuant to article 17-B of the Town Law, for and on behalf of the park district, bonds in the principal amount of $89,000. Since that time there have been similarly issued, for and on behalf of the park district, bonds in the principal amount of $286,000, the last of which was dated the 1st day of May, 1929.

During the period from plaintiff's incorporation to the time of its application for an injunction on December 9, 1931, taxes were levied and collected against the property within the boundaries of the village of Kensington, for and on behalf of the park district, to pay interest charges on the various bond issues and the other lawful expenses of the park district. Plaintiff's position is that it has elected to withdraw from the park district, pursuant to a resolution of the board of trustees adopted on the 13th day of January, 1931, and to pay no further charges toward the maintenance of the park district except for its proportionate share of bonds issued before its incorporation in 1921.

Article 17-B of the Town Law, under which the park district was established, consists of sections 349 to 349-n of the Town Law, which I will consider in so far as it is deemed to be involved.

Section 349 (added by Laws of 1916, chap. 54; since amd. by Laws of 1928, chap. 214) provides that the town board may, under designated conditions and preliminaries which need not here be considered, " create and establish a park district outside an incorporated village or city."

Section 349-a provides for the order establishing such park district and the appointment of park commissioners.

Section 349-c provides that the park commissioners so appointed by the town board shall constitute the board of park commissioners of such district, which, by the section, is created a body corporate " and shall have the powers of a municipal corporation." Title to all property shall vest in the board in its corporate capacity.

Section 349-d (added by Laws of 1916, chap. 54; since amd. by Laws of 1929, chap. 692) provides that " The board of park commissioners shall proceed to acquire the property described in the petition for the establishment of such park district and may improve the same and erect or cause to be erected thereon such buildings and structures as may be proper for the use thereof as a park."

By section 340-e it is made the duty of the town board to raise the amount of money required by the issue and sale of bonds, as provided in the article.

It is provided in section 340-h that the board may make contracts with an incorporated village or villages for the payment to such board by such village of amounts to be applied toward the maintenance or improvement of such park, in consideration whereof the inhabitants of such village or villages shall have the free use of such park.

Section 349-i provides that the board of commissioners shall prepare an estimate of the expenses of maintaining such park for the ensuing calendar year, including the amount to be paid for the principal and interest of the bonds. It further provides that the amount specified shall be levied and collected upon the taxable property in such park district in the same manner, at the same time and by the same officers as the town taxes, charges or expenses of such town are levied and collected, and the same shall be paid over to the board of park commissioners.

The learned Special Term based its decision upon the conclusion that the constitutional rights of the plaintiff were invaded, citing *People ex rel. Town of Pelham* v. *Village of Pelham* (215 N. Y. 374); *People ex rel. Met. St. R. Co.* v. *Tax Comrs.* (174 id. 417). This theory the plaintiff seeks to sustain, contending that there cannot be at the same time within the same territory two distinct municipal corporations exercising the same powers, jurisdiction and privileges. It must be conceded that the Constitution of the State of New York recognizes the established subdivisions of the State into counties, cities, towns and villages.

From the opinion written by COLLIN, J., in *People ex rel. Hon Yost* v. *Becker* (203 N. Y. 201), in which he reviewed the constitutional provisions relating to local government and the reasons why the Constitutional Convention of 1777 created subdivisions of the State for local government, I quote: " We hold that the adoption by the Constitution of counties, towns, cities and villages as the civil divisions exercising general powers of local government and the local auxiliaries of the State government is equivalent to a direct prohibition against the creation of other civil divisions vested with similar powers. This conclusion is supported by the opinion of this court in *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50) and *People ex rel. Townsend* v. *Porter* (90 N. Y. 68). There is nothing inconsistent with this view in the organization of boroughs in the city of New York, under its charter, as these are merely subordinate subdivisions of a city." The legislative acts condemned in that case (Laws of 1896, chap. 812; Laws of 1901, chap. 361) purported to revise and consolidate previous acts creating the " area or territory known as Sylvan Beach." The determination upon the facts, therefore, established no precedent here. As I

read the law, a park district is but an area of land. It is not in fact, nor is it intended by the law to be, a civil division for political purposes. The park board, however, a body corporate having the powers of a municipal corporation, is but an agency of the town.

Plaintiff bases its argument on the claim that the Legislature cannot deprive villages of the right of local self-government, and any statute effecting a transfer of the governing powers, including the right to assess and collect all taxes for functions of village government, is unconstitutional under article 10, section 2, of the Constitution, which reads: " All city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof, as the Legislature shall designate for that purpose." Plaintiff cites *People ex rel. Town of Pelham* v. *Village of Pelham* (215 N. Y. 374). I do not appreciate the application of that case. There the Legislature had enacted a tax act for Westchester county which required the town assessors to prepare all assessment rolls, whether for State, county, town, village or any tax district purpose, and the town collector to collect the taxes. No duty was left to the village trustees except to fix the amount of the annual village tax. The appeal there was from an order granting a motion for a peremptory writ of mandamus to compel the village trustees to certify to the receiver of taxes all taxes of the village for the year. To indicate clearly the distinction between that case and the one under review, it is essential to quote from the opinion (p. 379): " Embodied in this section is the home rule principle under which the right of self-government is secured to the localities of the State. It includes those rights of self-government which relate to the assessment and collection of taxes for village purposes which the villages enjoyed prior to the adoption of the present Constitution. Taxation for such a local purpose is the concern of the village rather than the town, county and State of which the village is an authorized subdivision. Within this limited local sphere the right to control the assessment and taxation of property for village purposes is a right which the village enjoys by virtue of the home rule provision of the Constitution." The court continued (at pp. 387, 388): " The right which was secured to each village to have its village taxes collected by a collector elected by the qualified voters of the village is taken away and the duty of collecting taxes is vested in a receiver of taxes elected or appointed by the township of which the incorporated village is a part. * * * It not only prescribes a new mode and manner of assessment but strips the local village officials of every vestige of authority which they formerly possessed

in this respect, except the right to fix and determine the amount of the annual tax. The important functions of assessment and collection are entirely taken away from the village authorities. Nor does it create a new district. It simply transfers the powers of one political subdivision of the state in regard to local taxation to the officials of a separate and distinct political subdivision. The fact that the village is included within the town does not make the act a lawful exercise of legislative power. If the Legislature may thus deprive villages of the right of local self-government, cities and towns may also be deprived of similar rights." As I read the case, the vice of the statute was that it deprived all incorporated villages of their right to assess and collect taxes for village purposes.

The tax the plaintiff seeks to enjoin is a tax for a special district separate and distinct from the village. It is to be collected by the collector of taxes of the town. (See Town Law, § 349-i.) It does not involve a constitutional question any more than do the other town, county and State taxes upon property in a village.

*People ex rel. Wood* v. *Draper* (15 N. Y. 532) was an action for ouster instituted against commissioners appointed under an act establishing a metropolitan police district, including the cities of Brooklyn and New York, and several other counties. It was there written (at p. 543): " If we were to establish the principle that the Legislature can never reduce the administrative authority of counties, cities or towns; can never resume in favor of the central power any portion of the jurisdiction of those local divisions, or change the partition of it among them, as it existed when the Constitution was adopted, we should, I think, make an impracticable government. It is the business of the Legislature to adjust, in the interest of the whole people of the State, the distribution of the powers of government; taking care that no direct provision of the Constitution is violated, and that no arrangement which it has made is incidentally disturbed. We do not find that an organization like the metropolitan district is anywhere forbidden; and we are unable to see that any arrangement of the machinery of the government which the Constitution has provided will be impeded or disturbed by the execution of the act." So, too, in *Matter of Mayor, etc., of City of New York* (99 N. Y. 569), a statute granting the New York city park department authority over a park partly in New York and partly in Westchester county, authorizing it to appoint police to act within the entire park, was held not to violate the article and section of the Constitution to which I have referred. It was pointed out that the park police were not county

officers and that the act did not oust any county officers of their functions or curtail their powers.

A case holding that agents of the city of New York were not acting as officers of the village of Mount Kisco, although they were authorized to perform functions within the village, is *Mead* v. *Turner* (134 App. Div. 691).

In *Matter of Bronx Parkway Commission* v. *Hylan* (119 Misc. 785; affd., 206 App. Div. 688; 236 N. Y. 593) a mandamus order was granted, requiring the board of estimate of the city of New York to provide funds for the expenditures of the Bronx parkway commission. It was there written (p. 787): " The legislation is further attacked as violating the home rule provisions (Art. X, § 2), and also sections 26 and 27 of article III of the State Constitution, because it vests control of the parkway in a special State commission, upon which powers of local legislation are conferred. Both branches of this argument are answered, in my opinion, by *Matter of McAneny* v. *Bd. of Estimate, etc.* [232 N. Y. 377] and *People ex rel. Met. St. R. Co.* v. *Tax Comrs.* (174 N. Y. 417, 445). These cases show that authority may be delegated to new officials created for a special purpose or with jurisdiction over a territory comprising parts or all of more than one governmental unit, where the exercise of their proper functions by the local officials is not interfered with."

*People ex rel. Met. St. R. Co.* v. *Tax Comrs.* (174 N. Y. 417) involved an appeal by the State Board of Tax Commissioners in seven proceedings from an order of the Appellate Division in each case, which reversed an order of the Special Term, reducing, and confirming as reduced, an assessment upon the special franchises of the respective relators. The court there held constitutional the statute authorizing the appellant to value the special franchises and held that it did not violate the home rule provision of the Constitution.

Plaintiff's chief complaint is the taxation of property within its territory, although it advises us that its principal contention upon this appeal is that the exercise of jurisdiction by the board of park commissioners in plaintiff village seriously thwarts the ability of the village to function in park matters and destroys the taxing sources and the tax collection within the village for park functions. Perhaps that principle may be involved, but if so, it is a result of the defendants' acts, and is involved but indirectly. Plaintiff retains the right, if it sees fit, to establish parks within its area without interference by the appellants, for the maintenance of which it is free to assess taxes.

Plaintiff cites *Matter of Davies* v. *Cheshire* (225 App. Div. 822), where this court reversed an order denying a motion for a peremp-

tory mandamus order, requiring the county treasurer to refund money to the village, collected as taxes for the support of the Nassau county police district. That case hinged upon the construction of the Nassau County Police Act, as amended. The question there was whether or not the village of Matinecock, Nassau county, became a special district for county police purposes upon its incorporation on the 2d day of April, 1928. Our conclusion was that the legislation embraced within the enactments considered showed a policy to leave the villages and cities free to exercise their delegated powers to establish a police force.

Plaintiff advances the argument that upon its incorporation it ceased to be a part of the Great Neck park district under the provisions of sections 34 and 35 of the Village Law, under which villages or cities incorporated out of the whole or part of special districts may apportion as between them their respective liabilities. The sections of the Town Law to which I have referred indicate that the Legislature contemplated the possibility of a subsequent incorporated village remaining part of a park district.

Section 349-m (added by Laws of 1917, chap. 232) makes specific reference to " any park district or * * * any incorporated village," permitting taxation of its inhabitants.

Section 349-n (added by Laws of 1922, chap. 394), concerning the alteration of park districts, indicates that the Legislature had in mind the possibility of the removal of territory from a park district. So, too, the Village Law, section 323 (added by Laws of 1915, chap. 305), provides for the devolution upon the board of trustees of the village of certain powers and duties of the town, where a village is incorporated so as to embrace the entire territory of the town. It makes no reference to the duties in relation to a park district and would justify the inference that the park district may continue even though its entire territory lies within the boundary of the village.

The next question involves the application of section 34 of the Village Law. That section was added by Laws of 1922, chapter 395, in effect March 31, 1922. I deem it of sufficient importance to quote it in full:

" § 34. Liability to special districts and collection of taxes. If the territory so incorporated as a village includes within its boundaries part of a special district established by the town for a sewer, water, light, fire, park, health, police or any other special district for municipal purposes the territory so included within the boundaries of the village shall not be relieved from bearing its proportionate share of any liability or indebtedness incurred for such special district purposes while such territory was a part of such special

district and until such liability is discharged, or such indebtedness paid the proportionate share to which such territory would be liable if it had not been included in the boundaries of the village shall be levied upon, assessed and collected from such territory by the proper officers of such village in the same manner as if such territory had not been included within the boundaries of the village. All moneys so collected shall be paid over from time to time by the village treasurer to the supervisor of the town to discharge such liability. The collector or receiver of taxes of a town and the treasurer of a county shall continue in the execution of his duties in respect to the property included in the boundaries of a village incorporated under the provisions of this act until he shall have collected the taxes authorized or assessed for the year of such incorporation or which have been extended on the town assessment roll and became a lien after such incorporation and pay to the treasurer of the village when collected the taxes extended on the assessment roll against property within the village for highway, health, water, light, fire, park, sewer, police or other special district purposes."

Section 35 of the Village Law (added by Laws of 1925, chap. 116), under the heading "Apportionment of property and obligations of a special district of a town upon the incorporation of a part in a village," provides that if the territory " so incorporated " as a village includes within its boundaries part of a special district established by the town, " the proportion of the bonded debt incurred by the town and payable by a tax against the property within a special district, for whose benefit the bonds were issued which shall be assumed by the village and the apportionment of personal and real property belonging to the special district shall be determined according to the relative assessed valuation of the personal and real property in that portion of the special district without the village and that portion within the village," in the manner therein prescribed. The provision is that when the town board, exclusive of a member residing in the village, and the trustees of the village are unable to agree " within six months after the incorporation of the village becomes complete " upon the proportion of the debt and the apportionment of the personal and real property, the Supreme Court shall have power to determine the division and enforce the award.

Plaintiff advises this court that it does not rely upon these sections as a basis for this action, except as they provide a procedure to be followed by villages which were incorporated out of territory formerly part of a special district, but that it appears from these sections that the Legislature never intended to permit two different municipal corporations, the town and the village, to exercise the

same powers over the same territory at the same time and for the same purposes. Further, that these sections apply to the plaintiff village by virtue of section 381 of the Village Law, which reads in part as follows:

" § 381. Effect of revision on general villages. The following villages are subject to the provisions of this chapter, as if incorporated thereunder: * * *

" 5. Villages incorporated under chapter sixty-four of the laws of nineteen hundred and nine and the acts amendatory thereof and supplementary thereto."

This is untenable for the reason that the present Village Law is chapter 64 of the Laws of 1909, and was extensively amended by chapter 650 of the Laws of 1927. Nevertheless, chapter 64 of the Laws of 1909 was retained and amendments were made to specific sections thereof. When the Legislature, in amending section 381 of chapter 64 of the Laws of 1909, stated that the provisions of chapter 65 of the Laws of 1909 applied to " villages incorporated under chapter sixty-four of the laws of nineteen hundred and nine," it added nothing to the original law. In other words, subdivision 5 of section 381 of the Village Law is surplusage, because that was the law which was being amended. Further, the amendments did not include or in any way refer to sections 34 and 35. There is nothing in the provisions of section 381 of the Village Law, as amended, which makes sections 34 and 35 retroactive, or more applicable to villages incorporated under chapter 64 of the Laws of 1909 than were such sections prior to the amendments contained in chapter 650 of the Laws of 1927. Clearly the plaintiff could not agree to something " within six months " of its incorporation when it had been incorporated almost four years prior to the time such statute was enacted. In any event, there is no provision removing from a district a village which has already been incorporated.

The *Matinecock* case (*Matter of Davies* v. *Cheshire*), to which I have made reference *supra*, has no bearing on the retroactivity of section 34. The village there was incorporated after the enactment of section 34. The 1928 amendment (Laws of 1928, chap. 513, adding § 3-a to Laws of 1925, chap. 451), referred to in the memorandum decision, merely provided machinery for removing territory, not necessary within the village, from the district. It was decided under Laws of 1925, chapter 451, section 3, which, as amended by Laws of 1926, chapter 3, section 1, provided: " The county of Nassau, outside of a city or village or a police district established pursuant to article fourteen-a of the Town Law, is hereby constituted a separate police district." It is apparent that

this court decided that the general language included villages thereafter incorporated. That is an entirely different question.

In *Orinoco Realty Co.* v. *Bandler* (233 N. Y. 24) the rule was recognized that statutes dealing with other matters than those of mere procedure will not be interpreted as retroactive unless such intent of the Legislature clearly appears. Cases holding to the same effect are *Jacobus* v. *Colgate* (217 N. Y. 235); *Union Pacific R. R. Co.* v. *Laramie Stock Yards Co.* (231 U. S. 190) and *Rhodes* v. *Sperry & Hutchinson Co.* (193 N. Y. 223).

There is another reason why the judgment cannot be sustained, and that is that the plaintiff is not the real party in interest. The point is raised in the first separate defense. The complaint does not disclose that the action purports to be brought on behalf of the taxpayers as a representative suit to avoid multiplicity of actions. It could not be so brought unless the plaintiff were a party really interested. (*County of Albany* v. *Hooker*, 204 N. Y. 1, and cases cited.)

The order granting plaintiff's motion for judgment on the pleadings and denying motion of defendant Great Neck Park District of the Town of North Hempstead therefor, the orders resettling and amending said order, and the judgment for plaintiff on the pleadings should be reversed on the law, with ten dollars costs and disbursements, and defendants' motions for judgment on the pleadings granted, with ten dollars costs. The appeals from the order granting injunction *pendente lite* and the orders resettling and amending it should be dismissed.

LAZANSKY, P. J., KAPPER, CARSWELL and DAVIS, JJ., concur.

Order granting plaintiff's motion for judgment on the pleadings and denying motion of defendant Great Neck Park District of the Town of North Hempstead therefor, orders resettling and amending said order, and judgment for plaintiff on the pleadings reversed on the law, with ten dollars costs and disbursements, and defendants' motions for judgment on the pleadings granted, with ten dollars costs. Appeal from order granting injunction *pendente lite* and orders resettling and amending it dismissed.