Benjamin Brenner, J.
This is a motion for an injunction pendente lite to restrain the Mayor of the City of New York from nominating and appointing new members of the Board of Education of the City School District of the City of New York pursuant to chapter 971 of the Laws of 1961 of the State of New York. The relief is requested pending a determination of a suit for a judgment declaring that said statute is unconstitutional, brought by two members of the board whose terms expire on September 20,1961 by virtue of its enactment.
*213 The motion, was denied several hours prior to the appointment sought to be enjoined, for the reasons set forth in the record and as more fully stated herein. Decision was also reserved on the cross motion made during the recorded argument to dismiss the complaint for the declaratory judgment. (The latter application is one which I have the power to determine on a motion for an injunction pendente lite [Leonard v. John Hancock Mut. Life Ins. Co., 118 N. Y. S. 2d 170, affd. 281 App. Div. 859]).
Before an injunction pendente lite may issue, the court must be satisfied, first, that the plaintiff’s right to the ultimate relief requested is not in doubt (Pechter Baking Co. v. Bober, 240 App. Div. 848; Russell v. American Gas & Elec. Co., 152 App. Div. 136; Sanka Coffee Corp. v. Broadway Subway Adv. Co., 221 App. Div. 579), and second, that the irreparable damage which it is claimed will result from its denial outweighs the damage which may result to the party whose actions are sought to be restrained (Waters of White Lake v. Fricke, 276 App. Div. 807). And, as to both of these requirements, plaintiffs have the burden of proof (Park Terrace Caterers v. McDonough, 9 A D 2d 113). The initial inquiry, therefore, is whether there is doubt concerning plaintiffs’ suit for a declaratory judgment, for, if I am satisfied that they are not entitled to that ultimate relief, I must reject their request for temporary judicial intervention.
The cause primarily relied upon in the complaint is that the statute in question is unconstitutional under the home rule provisions of the New York State Constitution. On oral argument, however, plaintiffs argued additionally that the statute was unconstitutional in that it was in the nature of a bill of attainder; that it was violative of the due process clause of the New York State Constitution (art. I, § 6) in that it deprived them of public office, conceived by them as a property right, without notice, confrontation and hearing.
The Legislature enacted the statute at an Extraordinary Session called by the Governor to deal with a crisis in the educational affairs of the New York City Board of Education which he, the Governor, found to exist on information apparently furnished him by the State Commissioner of Education. The law declares the Legislature to have found that ‘ ‘ the conditions existing in the school system of the City of New York have shaken public confidence, cause the legislature grave concern and call for prompt corrective action. These conditions include: — irregularities in the school construction program — serious hazards in school buildings due to inadequate maintenance and improper repairs — instances of corruption among *214 employees — staggering administrative complexities and needless red tape. The commissioner of education has warned that this is a time of crisis for the New York city schools and has urged prompt corrective action.” It then proceeds to take the following corrective action: (1) terminates the terms of office of the persons who on the effective date of this act comprise the membership of the Board of Education, and (2) provides a method of choosing a new Board of Education, which method gives the choice of such persons to the Mayor of the City of New York from a group to be chosen by a special board which is constituted for the purpose. The statute also repeals certain provisions of the Education Law which had already provided the manner in which the Board of Education of the City of New York was to be chosen.
Plaintiffs have likened the emergency legislation to that of a bill of attainder because they were thereby summarily discharged without opportunity to defend their reputations and records and without proof of personal wrongdoing which, they say, is violative of section 10 of article I of the United States Constitution. This appears to me to be an altogether groundless charge. While the legislative findings specifically cite improper and deleterious conditions as prevailing in the school system, no blame for those conditions is directed to plaintiffs, either as individual members of the board or to the board as a unit. Nor is any crime cited against, property taken from or punishment meted out to these plaintiffs — all ingredients of what is commonly understood to be a bill of attainder. Indeed, the individual plaintiffs before me may well have served without personal blemish and neither the Attorney-General nor the Corporation Counsel has charged them with any personal impropriety or wrongdoing. Any comparison of the law under attack to that of a bill of attainder is therefore altogether inappropriate. Though plaintiffs complain that the legislative findings are not based on hearings conducted by the Legislature, I am aware of no principle of law which requires it to conduct such hearings or to make its own investigation. Indeed, the Legislature may forego hearings altogether or, as it did here, it may rely upon the report of a State official, in this instance the Commissioner of Education, when enacting legislation, emergency or otherwise.
Now I find no merit in the contention that the home rule provisions of the New York State Constitution have been violated. While plaintiffs do not identify the articles or sections of the Constitution they contend are being violated, it is apparent that they are referring to sections 8 and 9 of article IX. These *215 sections give the City of New York the right to abolish certain offices within the City of New York and prevent the Legislature from passing laws relative to them. They have been interpreted as designed to give the people in subdivisions of the State the right to elect county, city, town and village officials (People ex rel. Bolton v. Albertson, 55 N. Y. 50; People ex rel. Pelham v. Village of Pelham, 215 N. Y. 374). They do not apply to school district officers 14 N. Y. St. Dept. Rep. 431). This is quite logical as the city school districts and Boards of Education remain creatures of the State Legislature even though power is vested by it in city governments to appoint and remove their members and to approve their budgets, as provided in the Education Law. But, precisely because of those very formidable powers, particularly that of control of the purse strings, the boards as agencies of the State government must remain independent of local governments. Indeed, the primary function of the boards being to educate the children in conformity to the provisions of the Education Law, control of that function is rightfully withheld from all State agencies and political subdivisions other than the Department of Education of the State of New York. It is clear, therefore, that the Boards of Education and their members are not the subjects of or affected by the home rule provisions of the Constitution.
But even if I were to assume that these public offices did come within the home rule provisions of the State Constitution, the Legislature reserves the power to make changes in the City Home Buie Law (Di Prima v. Wagner, 14 A D 2d 36, affd. 10 N Y 2d 728), especially when the action taken merely changes the method of selection of those State officials from that previously set out by it. Additionally, the power of appointment is still left in the hands of the Mayor, as is his power to remove for cause under existing charter provisions (New York City Charter, § 523), which has not been altered. It follows that the Legislature may, as it chose to do here, provide for a new method of appointment though it also exercised its prerogative by discharging the existing board. It may be noted, in passing, that if the Commissioner of Education of the State of New York, as a State official, were to remove board members pursuant to the power also vested in him under section 306 of the Education Law, such action would appear to amount to some diminution of home rule. Yet the argument has never been advanced that this power is in conflict with the home rule concept.
The further claim of unconstitutionality, advanced by plaintiffs on oral argument, is that they had been deprived of property without due process of law because there was neither a *216 preferment of charges nor a hearing. Of course, if plaintiffs had been removed for cause under existing provisions of law which do require officials to prefer charges and conduct hearings prior to removal, the failure to provide them would entitle plaintiffs to relief. But where the Legislature chose to take the matter of removal into its own hand by abolishing the old board, those provisions could not possibly bind the governing body itself.
Lastly, the contention that the right to public office, though it provides for no compensation, constitutes a property right, is a rather tenuous one for which the plaintiffs have not cited any authority. While it is conceivable that loss of reputation might indirectly cause loss of property, the termination of voluntary public office, where tenure is not specifically protected by constitutional safeguards, is a risk which must be anticipated by those who accept such posts.
The basic grievance of the plaintiffs appears to be that they were not considered as prospective members of the new board but I cannot see how this constitutes any deprivation of their constitutional rights since they have established no vested or other right to be members of either the old or new board.
A final word on the question of the claimed irreparable damage consequent upon the denial of this motion. Plaintiffs have wholly failed to satisfy me that any damage which may thus ensue to them personally is greater than the damage which must result to the City of New York and its school children upon preventing the appointment of the new board pursuant to the statute. Obviously, the latter event in the light of the present factual situation might well result in chaos in the entire school system of the city.
In view of the findings herein, I must of necessity hold that the action for a declaratory judgment is itself without merit and the complaint is consequently dismissed. An order having already been entered denying the motion, settle a further order on notice to dismiss the complaint.